**UNITED STATES of America, Appellee,**

v.

**Edwin KINSLEY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Michael GUERRA, Appellant.**

**Nos. 75–1114, 75–1119.**

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1975.

Decided June 27, 1975.

Joseph Stalmack, Jr., Hammond, Ind., for Edwin Kinsley.

Michael Guerra, pro se.

Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

---

Before MATTHES, Senior Circuit Judge, LAY, Circuit Judge, and REGAN, District Judge.*

MATTHES, Senior Circuit Judge.

Edwin Kinsley and Michael Guerra take these appeals from the denial by the district court of their motions under Rule 35, Fed.R.Crim.P., to correct their sentences.

Appellants (and one James Marihart) were convicted on all counts of a four-count indictment charging them, as previously convicted felons, with the unlawful possession of firearms in violation of 18 U.S.C. App. § 1202(a)(1).[1] Each count involved a separate firearm. The proof at trial showed that appellants were in possession of the four firearms at a single time and place. The district court imposed the maximum two-year term on each count, and provided that the terms of three of the four counts would run consecutively. Thus, for their single act of simultaneously possessing four firearms, appellants were found guilty of four offenses and sentenced to a term of imprisonment of six years. We affirmed the judgment of conviction. *United States v. Marihart*, 492 F.2d 897 (8th Cir.), *cert. denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974).[2]

Appellants then filed separate motions under Rule 35, Fed.R.Crim.P., to correct their sentences. They contended that the singular act of possessing the four firearms constituted only a single violation of § 1202(a), and that a term of imprisonment in excess of two years was thus illegal. The district court characterized the question as "an extremely close one," but proceeded to deny the motions for Rule 35 relief. The court found that the congressional purpose was one of minimizing the danger to society created by the possession of firearms by certain classes of people, and that Congress intended that this purpose be effectuated by making each firearm a unit of prosecution.

The appeals from the denial of relief by the district court were consolidated in this court for argument and opinion. We are faced with the single issue of whether the language of § 1202(a)(1), defining as a criminal offense the receipt, possession, or transportation in commerce by a previously convicted felon of "any firearm," allows the government to treat each of several firearms simultaneously possessed as a separate unit of prosecution.

## A. THE ALLOWABLE UNIT OF PROSECUTION: GENERALLY.

■ The allowable unit of prosecution for a federal offense is set by Congress. When Congress fails to set the unit of prosecution with clarity, doubt as to congressional intent is resolved in favor of lenity for the accused. This settled rule of federal criminal law has received its most celebrated expression in *Bell v. United States*, 349 U.S 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). *Bell* presented the issue of whether the simultaneous interstate transportation of two women in violation of the Mann Act (making unlawful the interstate transportation of "any

---

* The Honorable John K. Regan, District Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

1. The statute provides in relevant part:

   § 1202(a) Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony * * *

   \*    \*    \*    \*    \*    \*

   and who receives, possesses, or transports in commerce   .   .   .   any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. The issue presented by the instant appeals was not raised or considered in the appeal from the judgment of conviction. In addition to these appeals and the appeal from the judgment of conviction, we heard a pre-trial appeal involving the validity of the search warrant. We held the warrant valid and remanded the case to the district court for trial. *United States v. Marihart*, 472 F.2d 809 (8th Cir. 1972). Our opinions in the former appeals contain a resume of the facts relative to possession of the firearms.

woman or girl" for immoral purposes) constituted two offenses or only one. Finding the legislative intent ambiguous, the Court stated:

> About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.

349 U.S. at 83, 75 S.Ct. at 622.

The *Bell* rule of construction is founded on the dual considerations that criminal legislation must provide fair warning and that the legislature and not the courts should define criminal activity. *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). In implementing these considerations, the courts have not hesitated to apply the rule of lenity to a wide variety of legislative contexts in which Congress has failed to clearly indicate the allowable unit of prosecution. *See, e.g., Castle v. United States*, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961) (unlawful transportation of five falsely made money orders; held, one offense); *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (discharge of gun wounding two federal officers; held, one assault); *United States v. Universal*

*C.I.T. Credit Corp.*, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952) (wage and hour violations as to numerous employees over several weeks: held, single course of conduct constitutes only one offense); *United States v. Deaton*, 468 F.2d 541 (5th Cir. 1972), *cert. denied*, 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973) (simultaneous harboring of two prisoners; held, one offense); *United States v. Melville*, 309 F.Supp. 774 (S.D.N.Y.1970) (interference and obstruction of national defense by attempting to destroy three Army trucks; held, one offense).

Significantly, in many of the cases in which the courts have found a *Bell*-type ambiguity, the object of the offense has been prefaced by the word "any." Seemingly this is because "any" may be said to fully encompass (*i.e.*, not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms. *See, e.g., Ladner v. United States, supra* (statute provided: "Whoever shall forcibly * * * interfere with any person * * *"); *Bell v. United States, supra* (whoever knowingly transports "any woman or girl"); *United States v. Deaton, supra* ("Whoever * * * harbors * * * any prisoner * * * ");[3] *Parmagini v. United States*, 42 F.2d 721 (9th Cir. 1930, *cert. denied*, 283 U.S. 818, 51 S.Ct. 344, 75 L.Ed. 1434 (1931) ("any narcotic drug"; held, single concealment of two different drugs a single offense); *Braden v. United States*, 270 F. 441 (8th Cir. 1920) ("any of the aforesaid drugs"; held, possession of four different drugs a single offense);[4]

---

**3.** With respect to the bearing of the word "any" upon the allowable unit of prosecution, the court in *Deaton* commented:

> * * * The presence of the adjective "any" and singular nouns in the Mann Act ("... any woman or girl") was not used in *Bell* as a basis for a judicial finding of a clear legislative intent to punish a defendant separately for each woman or girl he transports by his single course of action. In fact that approach was essentially what was unsuccessfully urged by the dissenters. Similarly the use in the instant statute of the adjective "any" and a singular noun and pronoun ("... conceals any prisoner after his escape") is not sufficient authority

for a judicial pronouncement that Congress clearly intended that the number of sentences a man may be given for a single course of action of concealment could be determined by adding up the number of escapees concealed.
468 F.2d at 545–46.

**4.** This court in *Braden* stated the following regarding the meaning of "any":

> * * * Counsel for the United States contend that the words "any of the aforesaid drugs," as used in section 8, permit him to base a count upon each drug found in the possession of the defendant although the drugs were all found at the same time and

*United States v. Melville, supra* ("whoever * * * destroys * * * any national-defense material * * *"); *United States v. Martin,* 302 F.Supp. 498 (W.D.Pa.1969), *aff'd* 428 F.2d 1140 (3rd Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 361, 27 L.Ed.2d 269 (1970) ("any narcotic drug"; held, single transaction involving both heroin and cocaine constitutes a single offense). *But see Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915) ("whoever shall tear * * * any mail bag * * *"; held, tearing of each mail bag a separate offense). On the present authoritativeness of *Parmagini v. United States, supra,* and *Braden v. United States, supra,* compare *United States v. Busch,* 64 F.2d 27 (2nd Cir.), *cert. denied,* 290 U.S. 627, 54 S.Ct. 65, 78 L.Ed. 546 (1933), *with United States v. Martin, supra.*

### B. THE ALLOWABLE UNIT OF PROSECUTION: 18 U.S.C. App. § 1202(a).

▇ The question in the instant case thus narrows to whether the allowable unit of prosecution under § 1202(a) should be deemed ambiguous. In this inquiry, three general sources may be looked to: statutory language, legislative history, and the statutory scheme.

### 1. Statutory Language.

The statutory language of § 1202(a) is similar to that deemed ambiguous in *Bell*: as the statute in *Bell* defined the object of the offense as "any woman or girl," § 1202(a) defines the object of the offense as "any firearm." As noted in the earlier discussion, the word "any" has typically been found ambiguous in connection with the allowable unit of prosecution.

Recognizing this ambiguity, the Seventh Circuit has held that § 1202(a) makes the simultaneous possession of several weapons only one offense. *United States v. Calhoun,* 510 F.2d 861 (7th Cir. 1975). Similar results have been reached in cases concerning violations of other firearms statutes containing similar language. *See McFarland v. Pickett,* 469 F.2d 1277 (7th Cir. 1972) (construing 18 U.S.C. § 922(j)); [5] *United States v. Carty,* 447 F.2d 964 (5th Cir. 1971) (construing 18 U.S.C. § 922(i)).[6]

The government urges that the seemingly ambiguous language of § 1202(a) is rendered unambiguous by the preceding statutory section, 18 U.S.C. App. § 1201. In § 1201, entitled "Congressional findings and declaration," Congress makes the finding that a felon's receipt, possession, or transportation of "*a* firearm" provides a sufficient basis for the exercise of legislative power.[7] On the

---

place. We do not think that any such significance can be given to the word "any." The use of this word simply means that, if the defendant under the required circumstances should be found in possession of any of said drugs, he would be guilty.
270 F. at 443.

**5.** 18 U.S.C. § 922(j) provides:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

In *United States v. Calhoun, supra,* the government acknowledged in its brief that the

construction of § 922(j) in *McFarland* would perhaps control the construction of § 1202(a).

**6.** 18 U.S.C. § 922(i) provides:

It shall be unlawful for any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

In the *Carty* case the government conceded in its reply brief that the *Bell* rule of lenity controlled the unit of prosecution under § 922(i).

**7.** The text of this section reads:

The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons . . . constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

strength of this section, the government would have us distinguish the judicial construction given analogous firearms provisions and the direct authority of the Seventh Circuit's holding in *United States v. Calhoun, supra.*

We cannot agree that this findings and declaration section renders unambiguous the subsequent definition of the offense in § 1202(a). It does not necessarily follow that, because possession of a single firearm is *sufficient* to constitute the evil legislated against, Congress thereby intended that felons in simultaneous possession of more than one firearm should be deemed to have committed multiple offenses. Moreover, we are reluctant to substitute the prefatory language of § 1201 for the language actually used in § 1202(a) to define the criminal offense. In short, while we find the language of § 1201 relevant, we think it insufficient to eliminate the ambiguity in § 1202(a).

We conclude that the language of § 1202(a), defining as the object of the offense "any firearm," must be deemed ambiguous on the issue of whether a single firearm is the unit of prosecution. As discussed above, this conclusion reflects the effect typically given the word "any," and is in accord with the cases construing § 1202(a) and closely analogous firearms provisions. *See United States v. Calhoun, supra; McFarland v. Pickett, supra; United States v. Carty, supra.*

### 2. Legislative History.

Ambiguous statutory language may, of course, be clarified through an examination of legislative history. To this end, the government in its brief cites portions of the Congressional Record for the proposition that Congress, in passing the legislation under scrutiny, made the possession of each firearm a separate offense.

We have examined the legislative history cited by the government. This history, consisting largely of an explanation of the statute by Senator Long and general comments by other Senators, lends no assistance in resolving the precise issue presented here. The allowable unit of prosecution under the statute is simply not addressed.

The legislative history indicates that Congress intended to legislate against a grave evil and that possession of a single firearm by a convicted felon was sufficient to constitute that evil. As noted earlier, however, the congressional intent to impose criminal penalties for possession of a single firearm does not necessarily imply that simultaneous possession of more than one firearm should invoke multiple penalties. Moreover, the Supreme Court, in dealing with a different ambiguity problem in § 1202, found general arguments as to the gravity of the evil unavailing to prevent application of the *Bell* rule of lenity. *See United States v. Bass, supra.*[8] We conclude that the legislative history of § 1202(a) does not render the statute unambiguous.

### 3. Statutory Scheme.

The intent of Congress as to the allowable unit of prosecution may sometimes be discerned from the "statutory

---

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution.

In *United States v. Bass, supra,* the Supreme Court observed that the findings of "burdens" and "threats" in § 1201

simply state Congress' view of the constitutional basis for its power to act; the findings

do not tell us how much of Congress' perceived power was in fact invoked.

404 U.S. at 346, 92 S.Ct. at 522.

8. The ambiguity raised in *Bass* was whether the phrase "in commerce" in § 1202(a) applied to the crimes of "receiving" and "possessing," as well as "transporting." In finding the legislative history insufficient to prevent adoption of the *Bell* rule of lenity, the Court noted that § 1201 *et seq.* was "hastily passed, with little discussion, no hearings and no report." 404 U.S. at 344, 92 S.Ct. at 520.

scheme"; *i.e.*, the congressional intent as manifested in the overall legislative plan.

The statutory scheme has played an important role in the construction of at least one firearms provision: namely, 26 U.S.C. § 5861(d), making it unlawful

> * * * to receive or possess a firearm which is *not registered to him* in the National Firearms Registration and Transfer Record.

The Fifth Circuit found the language of this provision just as ambiguous as that in *Bell*,[9] but went on to find from an examination of the statutory scheme that Congress had intended a single firearm to be the unit of prosecution. *United States v. Tarrant*, 460 F.2d 701 (5th Cir. 1972). In so doing, it noted the legislative purpose to collect a transfer tax on each firearm transferred; since possession of several unregistered firearms frustrated the government's collection of the tax due on each weapon, the court reasoned that the possession of each individual firearm constituted a separate offense.

Of course, the taxing considerations present with respect to 26 U.S.C. § 5861(d) are not relevant to the construction of 18 U.S.C. App. § 1202(a). However, the government argues that the relatively short term of imprisonment authorized by § 1202—two years—is indicative of a congressional scheme providing for successively more severe punishment as the number of weapons possessed increases. We regard this ar-

gument as having some force. Nonetheless, it is not self-evident that the two-year term was designed so as to permit greater sentence liability in multiple weapon cases, and the argument ultimately rests on an assumption as to congressional intent. The rule of lenity enunciated in *Bell* was meant to preclude the substitution of assumptions for an undeclared congressional intent.

## C. CONCLUSION.

The unit of prosecution under 18 U.S.C. App. § 1202(a) must be determined largely on the basis of the precise statutory language, since neither the legislative history nor the statutory scheme provides meaningful guidance. However, we find the statutory language itself ambiguous.

■ The Supreme Court has recently reiterated that problems of this sort must be resolved in favor of the criminal defendant unless Congress has "plainly and unmistakably" defined the federal crime. *United States v. Bass, supra,* 404 U.S. at 348, 92 S.Ct. 515. We conclude that the ambiguity in § 1202(a) must be resolved in favor of the accused and that each of the appellants has committed only one offense.

■ We reverse the judgments of the district court and remand for resentencing in accordance with the principles set forth in this opinion.[10]

---

**9.** Because 26 U.S.C. § 5861(d) is drawn in terms of "*a* firearm," the provision arguably suffers from no ambiguity. The Tenth Circuit relied in part on this use of the article "a" in concluding that 26 U.S.C. § 5861(d) unambiguously made each firearm a unit of prosecution. *See Sanders v. United States*, 441 F.2d 412 (10th Cir.), *cert. denied,* 404 U.S. 846, 92 S.Ct. 147, 30 L.Ed.2d 82 (1971).

**10.** The government relies upon our unpublished opinion in *Willie J. Vaughan v. United*

*States of America,* No. 74–1920, filed March 20, 1975. The plan for publication of opinions adopted by this Circuit, provides: "Unpublished opinions . . . may not be cited or otherwise used in any proceeding before this or any other court . . . ." We therefore decline to consider *Vaughan,* or demonstrate how it is plainly distinguishable from these appeals.