**UNITED STATES, Appellee,**

v.

**Albert VERRECCHIA, Defendant, Appellant.**

**No. 98–1973.**

United States Court of Appeals, First Circuit.

Heard June 7, 1999.

Decided Nov. 19, 1999.

Mary A. Davis, by appointment of the court, with whom Tisdale & Davis was on brief, for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, was on brief, for appellee.

Before Lynch, Noonan,* and Lipez, Circuit Judges.

LIPEZ, Circuit Judge.

Albert Verrecchia, a convicted felon, was indicted on two counts of possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Each count accused Verrecchia of possessing multiple firearms. He was convicted after a jury trial. For the first time on appeal, Verrecchia argues that the trial court erred in not instructing the jurors that they had to agree unanimously on at least one particular firearm that he possessed out of the two named in Count One and out of the twenty-one named in Count Two. He also objects—again, for the first time on appeal—to numerous portions of the prosecutor's closing argument. We affirm.

---

* Of the Ninth Circuit, sitting by designation.

## I. Background

In early 1996, the Rhode Island State Police were attempting to locate a number of weapons that had been stolen during a series of burglaries in Rhode Island and Massachusetts. The police arrested one Michael Rossi in connection with several burglaries, and eventually secured his cooperation in the investigation into the location of the stolen weapons. Rossi claimed that Verrecchia, his associate, had hidden the weapons in a location unknown to Rossi. The police initiated a sting operation whereby a police officer would pose as a drug dealer wishing to purchase two of the firearms. Rossi contacted Verrecchia and arranged for Verrecchia to meet the officer. After meeting, the undercover officer agreed to purchase a .45 caliber Star Arms handgun and an AK–47 assault rifle from Verrecchia. Verrecchia stated that it would take him some time to find the two guns, which he said he had stored in a coffin-sized crate.

Verrecchia left in his truck, drove to a barn he rented, and retrieved the two weapons from the crate, all while under police airplane surveillance. After meeting the undercover officer and displaying the two weapons, which were in a box in the truck, Verrecchia was arrested. After his arrest he acknowledged that the crate contained guns and gave the police keys to the barn and the crate. Inside the crate the police found, inter alia, twenty-one additional firearms, a sawed-off shotgun, and several pipe bombs, the latter being separately packaged in a bag.

A four-count federal indictment issued against Verrecchia. Count One charged that he was a felon and that he possessed the Star Arms handgun and the AK–47 that he had transported in his truck and attempted to sell to the undercover officer, in violation of 18 U.S.C. § 922(g)(1). Count Two charged that he possessed the twenty-one firearms found in the crate in the barn, also in violation of § 922(g)(1). Counts Three and Four charged that he possessed the sawed-off shotgun and two pipe bombs in violation of 26 U.S.C. § 5861(d) (prohibiting the possession of certain types of firearms defined in 26 U.S.C. § 5845 if not registered to the possessor in the National Firearms Registration and Transfer Record).

At trial Verrecchia argued that he was entrapped into the sale of the guns described in Count One, and that Rossi, acting as an agent of the government, had threatened him with violence and that these threats caused Verrecchia to deliver the guns. Verrecchia denied possession of the contents of the crate (the guns described in Counts Two and Three and the pipe bombs described in Count Four), claiming that Rossi had borrowed the crate and sublet the barn space, and that Rossi had the key to the locks on the barn and the crate. The jury found Verrecchia guilty on Counts One and Two and not guilty on Counts Three and Four.

## II. Jury Unanimity Instruction

Counts One and Two alleged that Verrecchia violated 18 U.S.C. § 922(g)(1), which provides: "It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition...." The district court gave the following instruction to the jury regarding those counts:

> The government is not required to prove that the defendant possessed every firearm described in every count of the indictment. The possession element for a particular count may be established if you find that the defendant knowingly possessed any firearm described in that count of the indictment.

Towards the end of the charge to the jury, the court instructed the jury that "to render a verdict, all 12 of you must agree. That is, your verdict must be unanimous."

Verrecchia claims on appeal that the district court erred in failing to instruct the jurors that they had to agree

unanimously on at least one particular weapon that he possessed out of the two listed in Count One and out of the twenty-one listed in Count Two.[1] Because he did not object to the unanimity instructions given before the jury began its deliberations, we review for plain error. *See United States v. Bradstreet*, 135 F.3d 46, 50 (1st Cir.1998), *cert. denied,* —— U.S. ——, 118 S.Ct. 1805, 140 L.Ed.2d 944 (1998).

Verrecchia raises two related arguments for requiring jury unanimity on the specific weapons he possessed. He argues first that Counts One and Two each charged more than one crime—i.e., that they were duplicitous—and that a specific unanimity instruction was required to cure that duplicity. He also argues that if each count charged only one crime, and hence was not duplicitous, the possession of a particular weapon is still an element of the crime on which the jury must be unanimous.

## A. Duplicity and "the allowable unit of prosecution"

■ "Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Martinez Canas*, 595 F.2d 73, 78 (1st Cir.1979). "[T]he prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." *United States v. Valerio*, 48 F.3d 58, 63 (1st Cir.1995). Although an argument that an indictment should be dismissed as duplicitous is waived if not made before trial, *see id.;* Fed.R.Crim.P. 12(b)(2), a defendant is still entitled on request to an instruction requiring jury unanimity on which offense (of the two or more alleged in the duplicitous count) he committed, *see United States v. Puerta*, 38 F.3d 34, 40 (1st Cir. 1994). Verrecchia made no such request in this case. He argues nevertheless that

it was plain error to fail to give such an instruction, contending that the possession of each firearm is a separate violation of § 922(g)(1) that should be charged in a separate count of the indictment.

■ Verrecchia's argument raises the question, addressed by the Supreme Court in the leading case of *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), of "[w]hat Congress has made the allowable unit of prosecution under a statute which does not explicitly give the answer." *Id.* at 81, 75 S.Ct. 620 (citation and internal quotation marks omitted). The defendant in *Bell* had been convicted of two violations of the Mann Act, 18 U.S.C. § 2421 (prohibiting the interstate transportation of "any woman or girl" for purposes of prostitution), for transporting two women at the same time. The Court, noting that when Congress chooses to allow multiple prosecutions for a single transaction it has no difficulty expressing its will, found the statute to be ambiguous on the allowable unit of prosecution. *See id.* at 83, 75 S.Ct. 620. The Court thus applied the "presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment," and held that the simultaneous transportation of two women was only one violation of the Mann Act. *Id.*

We are the only circuit that has not ruled on "the allowable unit of prosecution" under the felon-in-possession statute (§ 922(g)(1) or its predecessors). The other courts of appeals have addressed the issue and have all agreed that the simultaneous possession of multiple firearms, or a firearm and ammunition, constitutes only one crime. *See United States v. Pelusio*, 725 F.2d 161, 168–69 (2d Cir.1983); *United States v. Frankenberry*, 696 F.2d 239, 244–45 (3d Cir.1982); *United States v. Dunford*, 148 F.3d 385, 390 (4th Cir.1998); *United States v. Bullock*, 615 F.2d 1082, 1084 (5th Cir.1980); *United States v. Ro-*

---

1. We will occasionally refer to such an instruction as a "specific unanimity" instruction. *See United States v. Hernandez–Albino,*

177 F.3d 33, 40 (1st Cir.1999) (affirming district court's "failure to give a specific unanimity charge on which gun was carried").

*senbarger,* 536 F.2d 715, 721 (6th Cir. 1976); *McFarland v. Pickett,* 469 F.2d 1277, 1279 (7th Cir.1972); *United States v. Kinsley,* 518 F.2d 665, 668–70 (8th Cir. 1975); *United States v. Wiga,* 662 F.2d 1325, 1336–37 (9th Cir.1981); *United States v. Valentine,* 706 F.2d 282, 292–94 (10th Cir.1983); *United States v. Bonavia,* 927 F.2d 565, 568–69 (11th Cir.1991); *United States v. Cunningham,* 145 F.3d 1385, 1398 (D.C.Cir.1998).

Those cases all rely, directly or indirectly, on *Bell* and the Supreme Court's holding therein that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." 349 U.S. at 84, 75 S.Ct. 620. The other circuits have found it particularly appropriate to follow the rule of *Bell* because of the similarity in the statutory language: § 922(g)(1), like its predecessors, forbids possession by a felon of "any firearm or ammunition," while the Mann Act forbade interstate transportation for immoral purposes of "any woman or girl." *See, e.g., Kinsley,* 518 F.2d at 668–69.

> Significantly, in many of the cases in which the courts have found a *Bell*-type ambiguity, the object of the offense has been prefaced by the word "any." Seemingly this is because "any" may be said to fully encompass (i.e., not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms.

*Id.* at 667.

■ We agree with the *Kinsley* court that with respect to the allowable unit of prosecution, "any firearm" is as ambiguous as "any woman or girl" was in *Bell. See id.* at 669. In the absence of any evidence that Congress clearly intended to treat each possession of a firearm as a separate violation of § 922(g)(1), the Supreme Court's holding in *Bell* requires us to resolve the ambiguity "against turning a single transaction into multiple offenses."

349 U.S. at 84, 75 S.Ct. 620. We thus join our sister circuits in holding that the simultaneous possession by a felon of multiple firearms, that is, possession of multiple firearms in one place at one time, is only one violation of § 922(g)(1).

Contrary to Verrecchia's contention, therefore, the government could not have properly charged him with twenty-three separate crimes for the twenty-three different guns he allegedly possessed. Instead, the indictment here correctly grouped the firearms into counts based on the place of possession: the guns Verrecchia had in his truck during the sting operation were charged together under Count One, and those he possessed in the crate in the barn were charged together under Count Two. Each count charged only one offense, despite the references in each to multiple firearms. Verrecchia was not entitled to a specific unanimity instruction to cure the alleged duplicity because neither count was duplicitous.

### B. Possession of a particular firearm as an element of the crime

■ Verrecchia also argues, albeit somewhat opaquely, that even if the simultaneous possession of multiple firearms is only one violation of § 922(g)(1), the district court still plainly erred by failing to instruct the jurors that to convict him of such a violation they must unanimously agree on at least one particular firearm that he possessed. The recent Supreme Court case of *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), guides our analysis of this argument. The issue in *Richardson* was whether a jury in a continuing criminal enterprise prosecution under 21 U.S.C. § 848, where the charge involves "a continuing series of violations" of the federal drug laws, must unanimously agree on three particular violations that the defendant had committed out of the many alleged by the government. A federal criminal jury must unanimously agree on each "element" of the crime in order to convict,

but need not agree on all the "underlying brute facts [that] make up a particular element." *Id.* 119 S.Ct. at 1710. The crucial distinction is thus between a fact that is an element of the crime and one that is "but the means" to the commission of an element. *Id.; see also United States v. Reeder,* 170 F.3d 93, 105 (1st Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 174, —— L.Ed.2d —— (1999) ("While a jury must agree on all of the elements of an offense, it need not agree on the means by which all the elements were accomplished.").

Whether a particular fact is a means or an element is a "value choice[ ] more appropriately made in the first instance by a legislature than by a court." *Schad v. Arizona,* 501 U.S. 624, 637, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion). The Court in *Richardson* thus addressed the jury unanimity issue as one of statutory construction and looked to considerations of "language, tradition, and potential unfairness" to discern Congressional intent. 119 S.Ct. at 1711. Because those considerations pointed to a Congressional intent to treat each of three predicate violations as a separate element, the Court held that it was error to fail to give an instruction requiring unanimity on which particular violations the defendant had committed. *See id.* at 1713. We must determine, looking to the same considerations, whether Congress intended to make the possession of a particular firearm an element of a § 922(g)(1) violation when simultaneous possession of multiple firearms is alleged.

"When interpreting a statute, we look first to the language." *Richardson,* 119 S.Ct. at 1710. Section 922(g) states that "It shall be unlawful for any person" in nine categories "to ... possess in or affecting commerce any firearm or ammuni-

tion...." The plain language of the statute suggests that the element of the crime is simply the possession of "any firearm." If so, then twelve jurors who agreed that a defendant possessed a firearm, but disagreed about which particular one, would be unanimous on the element—that he possessed "any firearm." Their disagreement would be acceptable because it would only concern "underlying brute facts." *Richardson,* 119 S.Ct. at 1710.

Other provisions of the statute are consistent with this interpretation. The categories of persons prohibited from possessing firearms include not only those, like Verrecchia, "who ha[ve] been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," § 922(g)(1), but also fugitives, drug addicts, illegal aliens, domestic abusers, and those who have renounced their U.S. citizenship, been committed to a mental institution, or dishonorably discharged from the military, *see* § 922(g)(2)-(9). In addition, the category of felons is modified by 18 U.S.C. § 921(a)(20), which carves out exceptions for criminal antitrust convictions, state offenses formally classified by state law as misdemeanors despite carrying sentences longer than one year, and convictions which have been expunged, set aside, pardoned, or for which civil rights have been restored without restriction on the right to possess firearms. The specific, technical description of the status of the possessor contrasts with the general description "any firearm,"[2] supporting the conclusion that Congress's focus was on the felon and not on the nature or number of firearms possessed.

The punishment provisions for violations of § 922(g) reveal a similar focus. Knowing violations of § 922(g) are punishable by imprisonment for up to ten years. *See* 18 U.S.C. § 924(a)(2). Violators with

---

**2.** The term "firearm" is defined at 18 U.S.C. § 921(a)(3) to mean:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to ·expel a projectile by the

action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

three prior violent felony or drug offenses may be punished by a fine of up to $25,000 and are subject to a minimum sentence of fifteen years. *See id.* § 924(e)(1). Conversely, where an individual's circumstances are judged to make him less of a threat to public safety, he may petition the Secretary of the Treasury for exceptional relief from the proscriptions of § 922(g). *See id.* § 925(c). Nothing in these statutory provisions indicates an intent on the part of Congress to link culpability to the nature or quantity of the weapons possessed, and the fine and minimum sentence provisions, as well as the available exception, reinforce our impression that Congress was primarily concerned with the characteristics of the individual felon in possession.

We also look to the legislative history for further evidence of Congressional intent. *See Kinsley,* 518 F.2d at 669 (reviewing legislative history in considering allowable unit of prosecution under felon-in-possession statute); *see also United States v. Meade,* 175 F.3d 215, 218–19 (1st Cir.1999) (examining legislative history in construing § 922(g)(9)). Section 922(g)(1) has its origins in former subsections of 18 U.S.C. § 922 and in 18 U.S.C.App. § 1202(a)(1), which were adopted in 1968 and superseded by the current version of § 922(g)(1) in 1986. *See* Pub.L. No. 90–351, 82 Stat. 197 (1968); Pub.L. No. 90–618, 82 Stat. 1213 (1968); Pub.L. 99–308, § 104(b), 100 Stat. 449, 459 (1986). Former § 1202(a)(1) criminalized firearm possession by convicted felons, overlapping with former § 922(h)(1), which criminalized receiving firearms that had been shipped or transported in interstate commerce by persons under indictment for or convicted of a felony. Both former subsections referred, like present § 922(g), to "any firearm."

In Congressional discussion of § 1202(a), Senator Tydings stated that it was "primarily designed to restrict access to handguns to criminals." *Ball v. United States,* 470 U.S. 856, 863 n. 12, 105 S.Ct.

1668, 84 L.Ed.2d 740 (1985) (quoting 114 Cong. Rec. 13639 (1968)). According to Senator Long, the sponsor of § 1202(a), the odd assortment of persons covered by that section (including those dishonorably discharged from the armed forces, illegal aliens, and those who had renounced U.S. citizenship) reflected those responsible for some of the notorious assassinations of the 1960s. *See id.* at 863 n. 13, 105 S.Ct. 1668 (quoting 114 Cong. Rec. 14773 (1968)). Senator Long also stated that the provision "simply set[ ] forth the fact that anybody who has been convicted of a felony ... is not permitted to possess a firearm...." *United States v. Bass,* 404 U.S. 336, 345 n. 13, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (quoting 114 Cong. Rec. 13868 (1968)). A "principal purpose" of § 922 "was to make 'it possible to keep firearms out of the hands of those not ... entitled to possess them because of ... criminal background....'" *Ball,* 470 U.S. at 863, 105 S.Ct. 1668 (quoting S.Rep. No. 90–1097, at 28 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2113). The Supreme Court noted that §§ 922 and 1202 demonstrate "Congress' worry about the easy availability of firearms ... to those persons who pose a threat to community peace," *Lewis v. United States,* 445 U.S. 55, 66, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), and "seek[ ] to keep a firearm from 'any person ... who has been convicted' of a felony," *id.* at 64, 100 S.Ct. 915, and other "persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). Like the statutory language, the legislative history focuses on the person, not the firearm. *See United States v. Berry,* 977 F.2d 915, 919 (5th Cir.1992) ("The evil Congress sought to suppress by section 922 was the arming of felons; the section is based on the status of the offender and not the number of guns possessed.").

Considerations of tradition and potential unfairness, the other factors analyzed by the Supreme Court in *Richardson,* do not

indicate that Congress had a different focus. Verrecchia does not identify, and we are not aware of, any legal tradition that sheds light on the question before us. *Cf. Richardson,* 119 S.Ct. at 1710–11 (stating that treating each "violation" as an element is supported by "a tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law").

Nor does this case present the kind of potential unfairness noted in *Richardson.* The Court saw two risks in treating each "violation" as a means to the series required for a continuing criminal enterprise conviction rather than as an element. First, it would permit "wide disagreement" among jurors about what the defendant had done, considering the many types of conduct "of varying degrees of seriousness" that qualify as violations of the federal drug laws. *Id.* at 1711. Second, it would aggravate the danger that jurors might fail to focus on factual detail and convict a defendant of being a drug kingpin on the basis of bad reputation alone. *See id.* Those risks are not present here. Each possession of a firearm by a felon is of equal seriousness, a fact that mitigates the significance of potential juror disagreement about which firearms are possessed. Furthermore, the only issue in a § 922(g)(1) case is usually whether the defendant possessed the gun or guns in question. Therefore, a juror in such a case is less likely to ignore the underlying factual detail than one presented with the massive and complicated evidence that typically accompanies a continuing criminal enterprise prosecution. We thus see no reason to conclude that Congress was moved by any perception of unfairness to treat the possession of a particular firearm as an element of a § 922(g)(1) violation.

Finally, although there is almost no case law directly on point, relevant precedent supports the view that the possession of a particular firearm is not an element. One court of appeals faced the identical issue and held, without extensive discussion, that failure to give a specific unanimity instruction was not plain error warranting reversal. *See United States v. Sims,* 975 F.2d 1225, 1240–41 (6th Cir.1992). No circuit has come to the opposite conclusion. We have held, in accord with other circuits, that jury unanimity on a particular firearm is not required in a prosecution under 18 U.S.C. § 924(c) for using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a federal violent or drug trafficking crime. *See United States v. Hernandez–Albino,* 177 F.3d 33, 40 (1st Cir.1999); *United States v. Morin,* 33 F.3d 1351, 1354 (11th Cir.1994); *United States v. Correa–Ventura,* 6 F.3d 1070, 1075–87 (5th Cir.1993). We have also held, in a § 922(g)(1) case, that the district court need not give the jury a special verdict form when the possession of multiple firearms is alleged, even where the particular firearms possessed could be relevant to sentencing. *See United States v. Ellis,* 168 F.3d 558, 561–62 (1st Cir.1999). *But cf. United States v. Melvin,* 27 F.3d 710, 714–15 (1st Cir.1994) (jury unanimity on specific firearms required in § 924(c) case where use of different firearms, of several alleged, would result in different mandatory minimum sentences).

In sum, the language of the statute and the other considerations examined above convince us that Congress did not intend the possession of a particular firearm to be an element of a § 922(g)(1) violation. There was thus no error, let alone plain error, in the district court's failure to give an instruction requiring jury unanimity on any particular firearm that Verrecchia possessed.

### III. Closing Argument

■ Verrecchia objects to a lengthy list of asserted errors in the government's closing argument. He claims that the prosecutor implied a contradiction between the testimony of the undercover police officer and Verrecchia where there was none. He also alleges that the prosecutor made numerous misstatements of the evidence, and made improper comments on the cred-

302

ibility of Verrecchia as a witness. Finally, Verrecchia contends that the prosecutor erred in arguing that Verrecchia lied about threats made to him by Rossi; the government concedes error on this point. Since Verrecchia did not object to any of these prosecutorial statements at trial, the alleged errors are subject to plain error review. *See United States v. Bey,* 188 F.3d 1, 6 (1st Cir.1999).

■ To establish plain error, a defendant must show that the alleged error was "clear under current law" or "obvious," and that the error was prejudicial in that it "affected the outcome" of the trial; even where that is the case, reversal is discretionary and will be warranted only where the plain error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Assuming arguendo that all of Verrecchia's contentions of error in the closing argument are correct, we still cannot say that he suffered prejudice from such errors in the sense that they "affected the outcome" of the trial. The evidence against Verrecchia on the felon-in-possession charges was overwhelming, including surveillance evidence documenting the stages of his travel during the transaction, his arrest in possession of the guns named in Count One, and his admission of knowledge that the guns named in Count Two were in a crate in a barn which he rented. The fact that he was acquitted on Counts Three and Four does not affect our conclusion that the evidence on Counts One and Two was overwhelming. Given the strength of the evidence against Verrecchia, nothing in the prosecutor's arguments amounted to plain error. *See United States v. Manning,* 23 F.3d 570, 574 (1st Cir.1994) (impact on trial outcome judged, inter alia, by strength of evidence against defendant).

*Affirmed.*