USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1973

 UNITED STATES,

 Appellee,

 v.

 ALBERT VERRECCHIA,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF RHODE ISLAND
 
 [Hon. Mary M. Lisi, U.S. District Judge]
 

 Before

 Lynch, Noonan,* and Lipez,
 Circuit Judges.
 
 
 
 
 Mary A. Davis, by appointment of the court, with whom Tisdale
& Davis was on brief, for appellant.
 Donald C. Lockhart, Assistant United States Attorney, with
whom Margaret E. Curran, United States Attorney, was on brief, for
appellee.

November 19, 1999

 
 *Of the Ninth Circuit, sitting by designation. LIPEZ, Circuit Judge. Albert Verrecchia, a convicted
felon, was indicted on two counts of possessing a firearm in
violation of 18 U.S.C. 922(g)(1). Each count accused Verrecchia
of possessing multiple firearms. He was convicted after a jury
trial. For the first time on appeal, Verrecchia argues that the
trial court erred in not instructing the jurors that they had to
agree unanimously on at least one particular firearm that he
possessed out of the two named in Count One and out of the twenty-
one named in Count Two. He also objects -- again, for the first
time on appeal -- to numerous portions of the prosecutor's closing
argument. We affirm.
 I. Background
 In early 1996, the Rhode Island State Police were
attempting to locate a number of weapons that had been stolen
during a series of burglaries in Rhode Island and Massachusetts.
The police arrested one Michael Rossi in connection with several
burglaries, and eventually secured his cooperation in the
investigation into the location of the stolen weapons. Rossi
claimed that Verrecchia, his associate, had hidden the weapons in
a location unknown to Rossi. The police initiated a sting
operation whereby a police officer would pose as a drug dealer
wishing to purchase two of the firearms. Rossi contacted
Verrecchia and arranged for Verrecchia to meet the officer. After
meeting, the undercover officer agreed to purchase a .45 caliber
Star Arms handgun and an AK-47 assault rifle from Verrecchia. 
Verrecchia stated that it would take him some time to find the two
guns, which he said he had stored in a coffin-sized crate.
 Verrecchia left in his truck, drove to a barn he rented,
and retrieved the two weapons from the crate, all while under
police airplane surveillance. After meeting the undercover officer
and displaying the two weapons, which were in a box in the truck,
Verrecchia was arrested. After his arrest he acknowledged that the
crate contained guns and gave the police keys to the barn and the
crate. Inside the crate the police found, inter alia, twenty-one
additional firearms, a sawed-off shotgun, and several pipe bombs,
the latter being separately packaged in a bag.
 A four-count federal indictment issued against
Verrecchia. Count One charged that he was a felon and that he
possessed the Star Arms handgun and the AK-47 that he had
transported in his truck and attempted to sell to the undercover
officer, in violation of 18 U.S.C. 922(g)(1). Count Two charged
that he possessed the twenty-one firearms found in the crate in the
barn, also in violation of 922(g)(1). Counts Three and Four
charged that he possessed the sawed-off shotgun and two pipe bombs
in violation of 26 U.S.C. 5861(d) (prohibiting the possession of
certain types of firearms defined in 26 U.S.C. 5845 if not
registered to the possessor in the National Firearms Registration
and Transfer Record).
 At trial Verrecchia argued that he was entrapped into the
sale of the guns described in Count One, and that Rossi, acting as
an agent of the government, had threatened him with violence and
that these threats caused Verrecchia to deliver the guns.
Verrecchia denied possession of the contents of the crate (the guns
described in Counts Two and Three and the pipe bombs described in
Count Four), claiming that Rossi had borrowed the crate and sublet
the barn space, and that Rossi had the key to the locks on the barn
and the crate. The jury found Verrecchia guilty on Counts One and
Two and not guilty on Counts Three and Four. 
 II. Jury Unanimity Instruction
 Counts One and Two alleged that Verrecchia violated 18
U.S.C. 922(g)(1), which provides: "It shall be unlawful for any
person . . . who has been convicted in any court of, a crime
punishable by imprisonment for a term exceeding one year . . . to
. . . possess in or affecting commerce, any firearm or ammunition
. . . ." The district court gave the following instruction to the
jury regarding those counts:
 The government is not required to prove that
 the defendant possessed every firearm
 described in every count of the indictment.
 The possession element for a particular count
 may be established if you find that the
 defendant knowingly possessed any firearm
 described in that count of the indictment.

Towards the end of the charge to the jury, the court instructed the
jury that "to render a verdict, all 12 of you must agree. That is,
your verdict must be unanimous." 
 Verrecchia claims on appeal that the district court erred
in failing to instruct the jurors that they had to agree
unanimously on at least one particular weapon that he possessed out
of the two listed in Count One and out of the twenty-one listed in
Count Two. Because he did not object to the unanimity
instructions given before the jury began its deliberations, we
review for plain error. See United States v. Bradstreet, 135 F.3d
46, 50 (1st Cir. 1998), cert. denied, 118 S. Ct. 1805 (1998).
 Verrecchia raises two related arguments for requiring
jury unanimity on the specific weapons he possessed. He argues
first that Counts One and Two each charged more than one crime --
i.e., that they were duplicitous -- and that a specific unanimity
instruction was required to cure that duplicity. He also argues
that if each count charged only one crime, and hence was not
duplicitous, the possession of a particular weapon is still an
element of the crime on which the jury must be unanimous.
A. Duplicity and "the allowable unit of prosecution"
 "Duplicity is the joining in a single count of two or
more distinct and separate offenses." United States v. Martinez-
Canas, 595 F.2d 73, 78 (1st Cir. 1979). "[T]he prohibition against
duplicitous indictments arises primarily out of a concern that the
jury may find a defendant guilty on a count without having reached 
a unanimous verdict on the commission of any particular offense." 
United States v. Valerio, 48 F.3d 58, 63 (1st Cir. 1995). Although
an argument that an indictment should be dismissed as duplicitous
is waived if not made before trial, see id.; Fed. R. Crim. P.
12(b)(2), a defendant is still entitled on request to an
instruction requiring jury unanimity on which offense (of the two
or more alleged in the duplicitous count) he committed, see United
States v. Puerta, 38 F.3d 34, 40 (1st Cir. 1994). Verrecchia made
no such request in this case. He argues nevertheless that it was
plain error to fail to give such an instruction, contending that
the possession of each firearm is a separate violation of 
922(g)(1) that should be charged in a separate count of the
indictment.
 Verrecchia's argument raises the question, addressed by
the Supreme Court in the leading case of Bell v. United States, 349
U.S. 81 (1955), of "[w]hat Congress has made the allowable unit of
prosecution under a statute which does not explicitly give the
answer." Id. at 81 (citation and internal quotation marks
omitted). The defendant in Bell had been convicted of two
violations of the Mann Act, 18 U.S.C. 2421 (prohibiting the
interstate transportation of "any woman or girl" for purposes of
prostitution), for transporting two women at the same time. The
Court, noting that when Congress chooses to allow multiple
prosecutions for a single transaction it has no difficulty
expressing its will, found the statute to be ambiguous on the
allowable unit of prosecution. See id. at 83. The Court thus
applied the "presupposition of our law to resolve doubts in the
enforcement of a penal code against the imposition of a harsher
punishment," and held that the simultaneous transportation of two
women was only one violation of the Mann Act. Id.
 We are the only circuit that has not ruled on "the
allowable unit of prosecution" under the felon-in-possession
statute ( 922(g)(1) or its predecessors). The other courts of
appeals have addressed the issue and have all agreed that the
simultaneous possession of multiple firearms, or a firearm and
ammunition, constitutes only one crime. See United States v.
Pelusio, 725 F.2d 161, 168-69 (2d Cir. 1983); United States v.
Frankenberry, 696 F.2d 239, 244-45 (3d Cir. 1982); United States v.
Dunford, 148 F.3d 385, 390 (4th Cir. 1998); United States v.
Bullock, 615 F.2d 1082, 1084 (5th Cir. 1980); United States v.
Rosenbarger, 536 F.2d 715, 721 (6th Cir. 1976); McFarland v.
Pickett, 469 F.2d 1277, 1279 (7th Cir. 1972); United States v.
Kinsley, 518 F.2d 665, 668-70 (8th Cir. 1975); United States v.
Wiga, 662 F.2d 1325, 1336-37 (9th Cir. 1981); United States v.
Valentine, 706 F.2d 282, 292-94 (10th Cir. 1983); United States v.
Bonavia, 927 F.2d 565, 568-69 (11th Cir. 1991); United States v.
Cunningham, 145 F.3d 1385, 1398 (D.C. Cir. 1998).
 Those cases all rely, directly or indirectly, on Bell and
the Supreme Court's holding therein that "if Congress does not fix
the punishment for a federal offense clearly and without ambiguity,
doubt will be resolved against turning a single transaction into
multiple offenses." 349 U.S. at 84. The other circuits have found
it particularly appropriate to follow the rule of Bell because of
the similarity in the statutory language: 922(g)(1), like its
predecessors, forbids possession by a felon of "any firearm or
ammunition," while the Mann Act forbade interstate transportation
for immoral purposes of "any woman or girl." See, e.g., Kinsley,
518 F.2d at 668-69. 
 Significantly, in many of the cases in which
 the courts have found a Bell-type ambiguity,
 the object of the offense has been prefaced by
 the word 'any.' Seemingly this is because
 'any' may be said to fully encompass (i.e.,
 not necessarily exclude any part of) plural
 activity, and thus fails to unambiguously
 define the unit of prosecution in singular
 terms.

Id. at 667. 
 We agree with the Kinsley court that with respect to the
allowable unit of prosecution, "any firearm" is as ambiguous as
"any woman or girl" was in Bell. See id. at 669. In the absence
of any evidence that Congress clearly intended to treat each
possession of a firearm as a separate violation of 922(g)(1), the
Supreme Court's holding in Bell requires us to resolve the
ambiguity "against turning a single transaction into multiple
offenses." 349 U.S. at 84. We thus join our sister circuits in
holding that the simultaneous possession by a felon of multiple
firearms, that is, possession of multiple firearms in one place at
one time, is only one violation of 922(g)(1).
 Contrary to Verrecchia's contention, therefore, the
government could not have properly charged him with twenty-three
separate crimes for the twenty-three different guns he allegedly
possessed. Instead, the indictment here correctly grouped the
firearms into counts based on the place of possession: the guns
Verrecchia had in his truck during the sting operation were charged
together under Count One, and those he possessed in the crate in
the barn were charged together under Count Two. Each count charged
only one offense, despite the references in each to multiple
firearms. Verrecchia was not entitled to a specific unanimity
instruction to cure the alleged duplicity because neither count was
duplicitous.
B. Possession of a particular firearm as an element of the crime
 Verrecchia also argues, albeit somewhat opaquely, that
even if the simultaneous possession of multiple firearms is only
one violation of 922(g)(1), the district court still plainly
erred by failing to instruct the jurors that to convict him of such
a violation they must unanimously agree on at least one particular
firearm that he possessed. The recent Supreme Court case of
Richardson v. United States, 119 S. Ct. 1707 (1999), guides our
analysis of this argument. The issue in Richardson was whether a
jury in a continuing criminal enterprise prosecution under 21
U.S.C. 848, where the charge involves "a continuing series of
violations" of the federal drug laws, must unanimously agree on
three particular violations that the defendant had committed out of
the many alleged by the government. A federal criminal jury must
unanimously agree on each "element" of the crime in order to
convict, but need not agree on all the "underlying brute facts
[that] make up a particular element." Id. at 1710. The crucial
distinction is thus between a fact that is an element of the crime
and one that is "but the means" to the commission of an element. 
Id.; see also United States v. Reeder, 170 F.3d 93, 105 (1st Cir.
1999), cert. denied, 68 U.S.L.W. 3079 (U.S. Oct. 4, 1999) (No. 99-
79) ("While a jury must agree on all of the elements of an offense,
it need not agree on the means by which all the elements were
accomplished."). 
 Whether a particular fact is a means or an element is a
"value choice[] more appropriately made in the first instance by a
legislature than by a court." Schad v. Arizona, 501 U.S. 624, 637
(1991) (plurality opinion). The Court in Richardson thus addressed
the jury unanimity issue as one of statutory construction and
looked to considerations of "language, tradition, and potential
unfairness" to discern Congressional intent. 119 S. Ct. at 1711. 
Because those considerations pointed to a Congressional intent to
treat each of three predicate violations as a separate element, the
Court held that it was error to fail to give an instruction
requiring unanimity on which particular violations the defendant
had committed. See id. at 1713. We must determine, looking to the
same considerations, whether Congress intended to make the
possession of a particular firearm an element of a 922(g)(1)
violation when simultaneous possession of multiple firearms is
alleged.
 "When interpreting a statute, we look first to the
language." Richardson, 119 S. Ct. at 1710. Section 922(g) states
that "It shall be unlawful for any person" in nine categories "to
. . . possess in or affecting commerce any firearm or ammunition .
. . ." The plain language of the statute suggests that the element
of the crime is simply the possession of "any firearm." If so,
then twelve jurors who agreed that a defendant possessed a firearm,
but disagreed about which particular one, would be unanimous on the
element -- that he possessed "any firearm." Their disagreement
would be acceptable because it would only concern "underlying brute
facts." Richardson, 119 S. Ct. at 1710. 
 Other provisions of the statute are consistent with this
interpretation. The categories of persons prohibited from
possessing firearms include not only those, like Verrecchia, "who
ha[ve] been convicted in any court of, a crime punishable by
imprisonment for a term exceeding one year," 922(g)(1), but also
fugitives, drug addicts, illegal aliens, domestic abusers, and
those who have renounced their U.S. citizenship, been committed to
a mental institution, or dishonorably discharged from the military,
see 922(g)(2)-(9). In addition, the category of felons is
modified by 18 U.S.C. 921(a)(20), which carves out exceptions for
criminal antitrust convictions, state offenses formally classified
by state law as misdemeanors despite carrying sentences longer than
one year, and convictions which have been expunged, set aside,
pardoned, or for which civil rights have been restored without
restriction on the right to possess firearms. The specific,
technical description of the status of the possessor contrasts with
the general description "any firearm," supporting the conclusion
that Congress's focus was on the felon and not on the nature or
number of firearms possessed.
 The punishment provisions for violations of 922(g)
reveal a similar focus. Knowing violations of 922(g) are
punishable by imprisonment for up to ten years. See 18 U.S.C.
 924(a)(2). Violators with three prior violent felony or drug
offenses may be punished by a fine of up to $25,000 and are subject
to a minimum sentence of fifteen years. See id. 924(e)(1). 
Conversely, where an individual's circumstances are judged to make
him less of a threat to public safety, he may petition the
Secretary of the Treasury for exceptional relief from the
proscriptions of 922(g). See id. 925(c). Nothing in these
statutory provisions indicates an intent on the part of Congress to
link culpability to the nature or quantity of the weapons
possessed, and the fine and minimum sentence provisions, as well as
the available exception, reinforce our impression that Congress was
primarily concerned with the characteristics of the individual
felon in possession. 
 We also look to the legislative history for further
evidence of Congressional intent. See Kinsley, 518 F.2d at 669
(reviewing legislative history in considering allowable unit of
prosecution under felon-in-possession statute); see also United
States v. Meade, 175 F.3d 215, 218-19 (1st Cir. 1999) (examining
legislative history in construing 922(g)(9)). Section 922(g)(1)
has its origins in former subsections of 18 U.S.C. 922 and in 18
U.S.C. App. 1202(a)(1), which were adopted in 1968 and superseded
by the current version of 922(g)(1) in 1986. See Pub. L. No. 90-
351, 82 Stat. 197 (1968); Pub. L. No. 90-618, 82 Stat. 1213 (1968);
Pub. L. 99-308, 104(b), 100 Stat. 449, 459 (1986). Former
 1202(a)(1) criminalized firearm possession by convicted felons,
overlapping with former 922(h)(1), which criminalized receiving
firearms that had been shipped or transported in interstate
commerce by persons under indictment for or convicted of a felony. 
Both former subsections referred, like present 922(g), to "any
firearm." 
 In Congressional discussion of 1202(a), Senator Tydings
stated that it was "primarily designed to restrict access to
handguns to criminals." Ball v. United States, 470 U.S. 856, 863
n.12 (1985) (quoting 114 Cong. Rec. 13639 (1968)). According to 
Senator Long, the sponsor of 1202(a), the odd assortment of
persons covered by that section (including those dishonorably
discharged from the armed forces, illegal aliens, and those who had
renounced U.S. citizenship) reflected those responsible for some of
the notorious assassinations of the 1960s. See id. at 863 n.13
(quoting 114 Cong. Rec. 14773 (1968)). Senator Long also stated
that the provision "simply set[] forth the fact that anybody who
has been convicted of a felony . . . is not permitted to possess a
firearm . . . ." United States v. Bass, 404 U.S. 336, 345 n.13
(1971) (quoting 114 Cong. Rec. 13868 (1968)). A "principal
purpose" of 922 "was to make 'it possible to keep firearms out of
the hands of those not . . . entitled to possess them because of
. . . criminal background . . . .'" Ball, 470 U.S. at 863 (quoting
S. Rep. No. 90-1097, at 28 (1968), reprinted in 1968 U.S.C.C.A.N.
2112, 2113). The Supreme Court noted that 922 and 1202
demonstrate "Congress' worry about the easy availability of
firearms . . . to those persons who pose a threat to community
peace," Lewis v. United States, 445 U.S. 55, 66 (1980), and "seek[]
to keep a firearm from 'any person . . . who has been convicted' of
a felony," id. at 64, and other "persons Congress classified as
potentially irresponsible and dangerous." Barrett v. United
States, 423 U.S. 212, 218 (1976). Like the statutory language, the
legislative history focuses on the person, not the firearm. See
United States v. Berry, 977 F.2d 915, 919 (5th Cir. 1992) ("The
evil Congress sought to suppress by section 922 was the arming of
felons; the section is based on the status of the offender and not
the number of guns possessed.").
 Considerations of tradition and potential unfairness, the
other factors analyzed by the Supreme Court in Richardson, do not
indicate that Congress had a different focus. Verrecchia does not
identify, and we are not aware of, any legal tradition that sheds
light on the question before us. Cf. Richardson, 119 S. Ct. at
1710-11 (stating that treating each "violation" as an element is
supported by "a tradition of requiring juror unanimity where the
issue is whether a defendant has engaged in conduct that violates
the law").
 Nor does this case present the kind of potential
unfairness noted in Richardson. The Court saw two risks in
treating each "violation" as a means to the series required for a
continuing criminal enterprise conviction rather than as an
element. First, it would permit "wide disagreement" among jurors
about what the defendant had done, considering the many types of
conduct "of varying degrees of seriousness" that qualify as
violations of the federal drug laws. Id. at 1711. Second, it
would aggravate the danger that jurors might fail to focus on
factual detail and convict a defendant of being a drug kingpin on
the basis of bad reputation alone. See id. Those risks are not
present here. Each possession of a firearm by a felon is of equal
seriousness, a fact that mitigates the significance of potential
juror disagreement about which firearms are possessed. 
Furthermore, the only issue in a 922(g)(1) case is usually
whether the defendant possessed the gun or guns in question. 
Therefore, a juror in such a case is less likely to ignore the
underlying factual detail than one presented with the massive and
complicated evidence that typically accompanies a continuing
criminal enterprise prosecution. We thus see no reason to conclude
that Congress was moved by any perception of unfairness to treat
the possession of a particular firearm as an element of a 
922(g)(1) violation.
 Finally, although there is almost no case law directly on
point, relevant precedent supports the view that the possession of
a particular firearm is not an element. One court of appeals faced
the identical issue and held, without extensive discussion, that
failure to give a specific unanimity instruction was not plain
error warranting reversal. See United States v. Sims, 975 F.2d
1225, 1240-41 (6th Cir. 1992). No circuit has come to the opposite
conclusion. We have held, in accord with other circuits, that jury
unanimity on a particular firearm is not required in a prosecution
under 18 U.S.C. 924(c) for using or carrying a firearm during and
in relation to, or possessing a firearm in furtherance of, a
federal violent or drug trafficking crime. See United States v.
Hernandez-Albino, 177 F.3d 33, 40 (1st Cir. 1999); United States v.
Morin, 33 F.3d 1351, 1354 (11th Cir. 1994); United States v.
Correa-Ventura, 6 F.3d 1070, 1075-87 (5th Cir. 1993). We have also
held, in a 922(g)(1) case, that the district court need not give
the jury a special verdict form when the possession of multiple
firearms is alleged, even where the particular firearms possessed
could be relevant to sentencing. See United States v. Ellis, 168
F.3d 559, 561-62 (1st Cir. 1999). But cf. United States v. Melvin,
27 F.3d 710, 714-15 (1st Cir. 1994) (jury unanimity on specific
firearms required in 924(c) case where use of different firearms,
of several alleged, would result in different mandatory minimum
sentences). 
 In sum, the language of the statute and the other
considerations examined above convince us that Congress did not
intend the possession of a particular firearm to be an element of
a 922(g)(1) violation. There was thus no error, let alone plain
error, in the district court's failure to give an instruction
requiring jury unanimity on any particular firearm that Verrecchia
possessed.
 
 III. Closing Argument
 Verrecchia objects to a lengthy list of asserted errors
in the government's closing argument. He claims that the
prosecutor implied a contradiction between the testimony of the
undercover police officer and Verrecchia where there was none. He
also alleges that the prosecutor made numerous misstatements of the
evidence, and made improper comments on the credibility of
Verrecchia as a witness. Finally, Verrecchia contends that the
prosecutor erred in arguing that Verrecchia lied about threats made
to him by Rossi; the government concedes error on this point. 
Since Verrecchia did not object to any of these prosecutorial
statements at trial, the alleged errors are subject to plain error
review. See United States v. Bey, 188 F.3d 1, 6 (1st Cir. 1999).
 To establish plain error, a defendant must show that the
alleged error was "clear under current law" or "obvious," and that
the error was prejudicial in that it "affected the outcome" of the
trial; even where that is the case, reversal is discretionary and
will be warranted only where the plain error "seriously affects the
fairness, integrity or public reputation of judicial proceedings."
United States v. Olano, 507 U.S. 725, 734 (1993). Assuming
arguendo that all of Verrecchia's contentions of error in the
closing argument are correct, we still cannot say that he suffered
prejudice from such errors in the sense that they "affected the
outcome" of the trial. The evidence against Verrecchia on the
felon-in-possession charges was overwhelming, including
surveillance evidence documenting the stages of his travel during
the transaction, his arrest in possession of the guns named in
Count One, and his admission of knowledge that the guns named in
Count Two were in a crate in a barn which he rented. The fact that
he was acquitted on Counts Three and Four does not affect our
conclusion that the evidence on Counts One and Two was
overwhelming. Given the strength of the evidence against
Verrecchia, nothing in the prosecutor's arguments amounted to plain
error. See United States v. Manning, 23 F.3d 570, 574 (1st Cir.
1994) (impact on trial outcome judged, inter alia, by strength of
evidence against defendant).
 Affirmed.