# United States Court of Appeals
## For the First Circuit

Nos. 10-2268, 10-2302

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID WIDI,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,

Selya and Boudin, Circuit Judges.

James S. Hewes, by appointment of the court, for appellant.
David J. Widi, Jr. on brief pro se.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief for
appellee.

July 6, 2012

**BOUDIN, <u>Circuit Judge</u>.**  David Widi, who now appeals to this court, was convicted by a jury in Maine federal district court of possessing a firearm or ammunition as a prohibited felon and manufacturing marijuana.  The saga began on November 25, 2008, with a search warrant for Widi's apartment secured by an agent of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

The apartment, searched three days later, contained what one of the officers described as an "elaborate growing system" for marijuana; seventeen marijuana plants; rounds of ammunition on the kitchen counter and throughout the apartment; a reloading press for ammunition; a loaded pistol in the nightstand beside Widi's bed; a .50 caliber rifle barrel in the attic; and (in a locked gun safe) six guns of varying styles, a bag of marijuana, and more ammunition.

Widi was arrested and eventually charged with both possession of firearms and ammunition as a prohibited felon, 18 U.S.C. § 922(g)(1) (2006), and manufacturing marijuana, 21 U.S.C. § 841(a)(1).  Following a two-day trial, the jury returned a guilty verdict after less than two hours of deliberation.  Widi was later sentenced to 108 months' imprisonment.  Widi now appeals and, supplementing his attorney's brief with his own, raises a host of issues.

Competence.  The first argument by Widi's appellate counsel is that Widi was not competent to stand trial.  At the formal hearing on Widi's competency on November 30, 2009, his trial counsel explained that both he and Widi took the position that Widi was competent to stand trial.  Although the government suggests that the issue may have been waived or is subject only to plain error review, we will assume arguendo that review is for clear error, which is the normal standard for findings by the district judge.  United States v. Reynolds, 646 F.3d 63, 71 (1st Cir. 2011).

After Widi's indictment, his then-counsel, Mary Davis, raised concerns about Widi's competence with the government, saying that Widi was incapable of focusing on the issues as to whether he should plead or go to trial.  The government, in turn, filed a motion for a mental examination with the court under the governing statutory procedure.  18 U.S.C. §§ 4241(a)-(b), 4247(b)-(c).  Widi himself resisted mildly but the district judge, noting his "own concerns," granted the motion.

A further hearing followed with a similar colloquy after which Widi underwent an examination primarily conducted by William J. Ryan, a licensed psychologist.  However, Widi consistently refused to cooperate and he also refused to participate in treatment sessions with a prison psychiatrist.  Dr. Ryan depended therefore on observations of Widi, conversations with his grandmother and attorneys, and a review of documents; he

acknowledged that his diagnoses were made with "less than the usual degree of psychological certainty."

In his report, Dr. Ryan ultimately concluded that

> Mr. Widi is incapable of comprehending the seriousness of his case, the recommendations of defense counsel, communicating with counsel, weighing the merits of various defenses, and making decisions regarding his right to a trial, his right to an attorney, his right to enter into a plea, and his right to call witnesses. Mr. Widi is currently not capable of testifying in his own defense and speaking during sentencing proceedings should it be necessary . . . . Mr. Widi does not have a rational and factual understanding of the proceedings against him, and he is incapable of assisting counsel with his defense. Within less than the usual degree of psychological certainty, it is the opinion of this evaluator, Mr. Widi is currently Not Competent to Stand Trial.

The report cited specific facts in support of its conclusion of Widi's incompetence. For example:

> -Widi used a cart full of books to barricade himself inside a holding cell to prevent staff from changing his cell and shouted about having "to go to war"
>
> -Widi asserted that the whole federal government was against him and repeatedly claimed that evaluation was unethical and unconstitutional
>
> -Widi attempted to throw himself down a flight of stairs when his cell was changed, causing him to be placed on suicide watch
>
> -Widi frequently displayed extreme emotional behavior
>
> -Widi's family has a history of serious mental illness and substance abuse.

-4-

As Davis and Widi continued to disagree about his competency, she withdrew and was replaced by Peter Rodway. Rodway, after conferring with Widi, concluded that Widi could adequately assist in his defense and, thereafter, the formal hearing on competency took place on November 30, 2009. Both Rodway and the prosecutor disagreed with Dr. Ryan's report, which the judge admitted into evidence on his own motion. Neither side called any other witness nor provided any other evidence beyond Rodway's express representation that he found Widi competent.

The judge ruled that Widi was competent, saying:

> I've had the opportunity to review the report. I agree with counsel that I believe the report's conclusion is erroneous. I think it's based on insubstantial predicate. In my view, the doctors arrived at a hasty conclusion based on inadequate evidence and I reject the result of that report.
>
> I'm entirely in agreement with counsel's position. I find by a preponderance of the evidence this defendant is presently and will in the reasonable future be competent to stand trial.
>
> I find specifically this defendant -- and I would note I've observed him every time he has been in court and my decision is based in part on my interaction with this defendant. I find that he has sufficient present ability to consult with his counsel with the reasonable degree of rational understanding.
>
> I further find that this defendant has a rational as well as a factual understanding of the proceedings against him and the possible consequences. I also might note as an aside that his interaction with the earlier

examiners, as indicated in the report, underlines that understanding.

Three circumstances lend support to the district court's finding. First, defense counsel's conclusion of competence is generally given great weight because of counsel's "unique vantage," United States v. Muriel-Cruz, 412 F.3d 9, 13 (1st Cir. 2005). True, Davis had strongly questioned Widi's competency and found that she could not effectively discuss matters with him. But Rodway found that he could work with Widi, a relationship possibly enhanced by Rodway's willingness to go to trial.

Second, the district judge may take into account his own observations of the defendant, Muriel-Cruz, 412 F.3d at 13; United States v. Pryor, 960 F.2d 1, 2 (1st Cir. 1992), and in this case the district court had several times dealt with Widi in the courtroom. On these appeals this court has itself reviewed pertinent transcripts which confirm that Widi was far from incoherent. See United States v. Huguenin, 950 F.2d 23, 28 & n.5 (1st Cir. 1991).

Third, Widi's own insistence on his competency is also entitled to consideration. See Muriel-Cruz, 412 F.3d at 13. Widi might be mistaken and, if plainly incoherent or irrational, his assertion to the contrary could hardly be accepted. See Reynolds, 646 F.3d at 71. But he was not in this state. And, as between an additional four month confinement for observation, 18 U.S.C. § 4241(d), and a trial that might go on being postponed after that,

most would give some thought to the defendant's own preference and profession.

Dr. Ryan deemed Widi incompetent and, as the only clinician, his views too are entitled to weight, Muriel-Cruz, 412 F.3d at 13, even if his examination was handicapped by Widi's refusal to cooperate. But competence to stand trial is a functional inquiry. Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam); Robidoux v. O'Brien, 643 F.3d 334, 339 (1st Cir.), cert. denied, 132 S. Ct. 866 (2011). A defendant may have serious mental illness while still being able to understand the proceedings and rationally assist his counsel. Brown v. O'Brien, 666 F.3d 818, 826-27 & n.9 (1st Cir. 2012), cert. denied, 2012 WL 1379023 (June 25, 2012).

The district judge did not have a wealth of choices. Calling Dr. Ryan as a court witness might have been helpful, but his position and explanations were both set forth in his report. As Widi had refused to cooperate with Dr. Ryan's evaluation and the prison psychiatrist's attempt at treatment, it is unclear that more information would be gained by ordering another immediate examination. About the only remaining option was a postponement of trial and continued observation--over the objection of both Widi and his counsel.

Like many factual issues presented in district court, this one had no inescapable single answer. Dr. Ryan knew more than

anyone else about diagnosing mental states; the judge, more about what help and understanding is needed from a defendant in a criminal trial; Rodway, about what kind of cooperation Widi was giving. The district judge made a debatable call; but the factual determination on which it rests was not clear error.

Pretrial Motions. Widi argues that the affidavit that underpinned the search warrant was inadequate. Widi succeeded in suppressing evidence seized from his vehicle and pre-Miranda statements made in response to questioning, but the search warrant was readily upheld, as it should have been. It rested on statements by two different confidential informants that they had made multiple visits to Widi's apartment and had seen both marijuana and guns; one also described a marijuana growing operation in the second bedroom.

This was ample to show a "fair probability that contraband or evidence of a crime" would be found, Illinois v. Gates, 462 U.S. 213, 238 (1983), and more than ample to trigger Leon's protection for reasonable reliance on a warrant even if the latter were marginally defective, United States v. Leon, 468 U.S. 897, 922 (1984). That the informants had criminal records or sought to benefit from cooperation goes only to weight; and while one informant's information was six months old, the other had been at the apartment only three weeks before.

Widi also objects to the district court's decision not to exclude statements he made after he had been given a Miranda warning, invoking Missouri v. Seibert, 542 U.S. 600 (2004). Seibert makes vulnerable some post-Miranda statements if they were induced by pre-Miranda statements that should themselves not have been taken without a warning, although how to read the split decision in Seibert may be an open question.[1] See generally United States v. Jackson, 608 F.3d 100, 103-04 (1st Cir.), cert. denied, 131 S. Ct. 435 (2010).

This court has not settled on a definitive reading but the statements here at issue pass either version of the Seibert test. Widi was detained for only 10 to 15 minutes prior to arrest and administration of the Miranda warning; and the pre-warning inquiries were primarily aimed at getting on-the-scene access to the locked gun safe and any firearms within it; nothing suggests that the agents were intending to use them to extract later post-warning information or that the later warnings were rendered ineffective by the earlier questions.

Widi also argues that the district court erroneously denied his motion requesting a severance of the charges because they were misjoined or, in the alternative, because the joinder was

---

[1]Seibert had no clear majority; Justice Souter's plurality opinion garnered four votes and Justice Kennedy who supplied the necessary fifth vote concurred in the judgment, writing separately. Seibert, 542 U.S. at 604, 618.

unduly prejudicial. Widi argues that the gun and drug counts were misjoined because not part of a common scheme or plan, Fed. R. Crim. P. 8, but the inference of a connection between drug dealing and weapons is commonplace, and gun and drug charges are regularly tried together. E.g., United States v. Paneto, 661 F.3d 709 (1st Cir. 2011), cert. denied, 2012 WL 1204086 (May 14, 2012).

Widi's specific complaint as to severance is that the mention of the predicate felony for the felon-in-possession charge, 18 U.S.C. § 922(g)(1)--to which he stipulated--impermissibly prejudiced him in defending against the manufacturing marijuana charge. The bare mention of a prior felony conviction otherwise unidentified was trivial, and dwarfed here by the powerful separate evidence as to each charge. As already noted, Widi had both an armory and a relatively sophisticated marijuana growing operation in the apartment.

Jury instructions. The next issue in the case is a claim relating to the instructions. Seven weapons were found in the apartment and charged in the indictment--six in the safe and one in Widi's bedside table--as well as various pieces of ammunition. It was enough to convict if the jury found that Widi knowingly possessed even one gun or one bullet, 18 U.S.C. § 922(g)(1), but Widi's counsel on appeal claims that he was entitled to a unanimity instruction requested below but refused.

-10-

The request made below was that the jury had to agree unanimously that Widi possessed the guns in the safe or unanimously that he possessed the gun in the nightstand.[2]  Sensibly, counsel seeks to offer at least a token doubt as to each scenario, suggesting that the jury could, on the evidence, have plausibly believed that he had no access to the safe and that the gun in the night table was planted.  Thus, the jury could have convicted without unanimously agreeing as to either scenario.

Putting aside other testimony connecting Widi with a gun purchase, any disagreement about the guns would have been harmless since ammunition recovered in the apartment was also charged and, unlike the guns, the ammunition was in plain view and confirmed by photographs of the scene.  So even if none of the jurors believed Widi possessed any of the guns, he was still patently guilty of the single felon in possession count based on the ammunition.

However, the government's counter to the claim in its brief prompts a word of caution.  Our decisions do endorse the government's position that a unanimity instruction would ordinarily not be necessary so long as the indictment charges possession of

_____

[2]The requested unanimity instruction would have told the jury that with regard to both the nightstand and the gun safe, "you must find unanimously, all of the elements of the offense . . . in order to return a verdict of guilty with regard to either the firearms in the safe or the firearm in the nightstand."

-11-

guns and ammunition "in one place at one time."[3]  But the quoted phrase is not itself a self-executing concept and ought not be read without regard to the facts developed at trial and the underlying issues that the phrase is meant to address.

United States v. Verrecchia, 196 F.3d 294 (1st Cir. 1999), holds that if a felon possessed a single cache of weapons at one time and in one place, there is only a single violation of the felon in possession statute--a defendant-friendly reading which remains sound law.  Id. at 297-98.  And, if the weapons are together in a box or a safe, then almost certainly the defendant either knowingly possessed all or none of them and no unanimity instruction focusing on which ones he knowingly possessed would make any sense.

But imagine that while the indictment easily passed the Verrecchia test, trial evidence showed that the weapons were so located that a juror might reasonably believe quite different things about the defendant's knowing possession of different guns and that the risk Widi invokes here were a real one.  Then, the question how to construe and apply the "one place at one time" formula and whether a unanimity instruction ought to be given would need thoughtful consideration.  See Leahy, 473 F.3d at 410.

---

[3]United States v. Leahy, 473 F.3d 401, 410 (1st Cir.), cert. denied, 128 S. Ct. 374 (2007); United States v. Verrecchia, 196 F.3d 294, 298 (1st Cir. 1999).  See also United States v. Hernandez-Albino, 177 F.3d 33, 40 (1st Cir. 1999); United States v. Correa-Ventura, 6 F.3d 1070, 1075-87 (5th Cir. 1993).

Sufficiency of the Evidence.  Claiming that he was convicted on insufficient evidence, Widi says that the witnesses against him were untrustworthy, while he and other witnesses offered in his defense were telling the truth.  He also says that evidentiary problems with the marijuana samples created reasonable doubt.  Widi must show that, "crediting the government's witnesses and drawing all reasonable inferences in its favor, no reasonable jury could have reached a guilty verdict."  United States v. Aranjo, 603 F.3d 112, 116 (1st Cir.), cert. denied, 131 S. Ct. 209 (2010).

Agent McNeil testified about what law enforcement found in the apartment; jurors saw photographs and videos of the residence; a witness testified to seeing Widi use and possess guns; and at least one witness testified to seeing Widi's marijuana operation in the apartment.  Widi said that much of the evidence against him was planted.  Given the evidence presented at trial, the jury was perfectly entitled to disbelieve him and convict on both counts.

Sentencing.  The district court sentenced Widi to 108 months, within but at the top of the guidelines sentencing range (87 to 108 months) for a defendant with an adjusted offense level of 28 and a criminal history placing him in Category II.  U.S.S.G. ch. 5, pt. A, sentencing table (2010).  Widi's  main attacks are on the calculation of the adjusted offense level.   The district

-13-

court's factual findings are reviewed for clear error; interpretations of the guidelines are reviewed de novo. United States v. Stergios, 659 F.3d 127, 135 (1st Cir. 2011).

The district court fixed the base offense level at 20 because it found that Widi, having a prior felony conviction, had possessed a semiautomatic weapon capable of accepting a large capacity magazine. U.S.S.G. § 2K2.1(a)(4)(B). Widi says that a gun barrel found in the attic was separate from the large capacity magazines found in his apartment, U.S.S.G. § 2K2.1(a)(4)(B), cmt. n.2, but the enhancement was based on other weapons Widi ignores. His claim that the guideline provision is unlawful is foreclosed. United States v. Marceau, 554 F.3d 24, 30 (1st Cir.), cert. denied, 129 S. Ct. 2752 (2009).

Next, Widi challenges the factual basis for the four-level enhancement he received under U.S.S.G. § 2K2.1(b)(6) for possession of firearms "in connection with another felony offense"--in this case the manufacturing of marijuana. The enhancement is concerned with the potential that guns will facilitate the other offense, id. cmt. 14(A), and provides that "close proximity to drugs [or] drug-manufacturing materials" is sufficient to warrant the enhancement. Id. cmt. 14(B).

Widi says that as six of his seven guns were locked in a safe, they had no potential to facilitate his drug operation. The evidence showed that the safe was near the marijuana operation in

the small apartment and several witnesses agreed that Widi had access to the safe.  As for the loaded pistol found in the nightstand, Widi simply asserts that it had nothing to do with drug cultivation.  It was not error at all, let alone clear error, to impose the enhancement.  <u>Compare</u> <u>Paneto</u>, 661 F.3d at 716-18.

Widi also contests a further two-level enhancement for obstructing justice but the challenge is without merit.  U.S.S.G. § 3C1.1.  Widi testified at trial that the handgun in his nightstand was planted by a friend and the marijuana found in his apartment had been planted or manufactured by law enforcement.  Given the trial evidence, the district court was entitled to deem this testimony to be perjury.

Little need be said about the further claim that the sentence, although within the guidelines, was unreasonable.  The weaponry alone suggest that Widi is quite dangerous; and, his perjury aside, the judge found that Widi had threatened a witness in the course of the proceedings.  Neither the result nor the court's explanation was in any way unreasonable.  <u>See</u> <u>United States</u> v. <u>Ozuna-Cabrera</u>, 663 F.3d 496, 503-04 (1st Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1936 (2012).

Widi, in his pro se brief, says that his prior offense was not a felony, but he stipulated to the prior felony at trial and, while we may disregard a stipulation where justice requires, <u>United States</u> v. <u>Torres-Rosario</u>, 658 F.3d 110, 116 (1st Cir. 2011),

<u>cert. denied</u>, 132 S. Ct. 1766 (2012), Widi provides no compelling reason for us to do so; indeed, our own review of what was before the court confirms that the stipulation was appropriate.

Widi also argues that his civil rights were restored after his prior conviction and so he should not be treated as a felon in possession. 18 U.S.C. § 921(a)(20). This statutory exception is an affirmative defense, <u>United States</u> v. <u>Bartelho</u>, 71 F.3d 436, 440 (1st Cir. 1995), so the burden is on the defendant, <u>United States</u> v. <u>Hartsock</u>, 347 F.3d 1, 10 (1st Cir. 2003). The evidence of such a restoration now relied on by Widi is highly doubtful but was in any case never presented to the district court. There was no error.

Widi invokes the Speedy Trial Act, claiming that the government failed to indict him within thirty days of his arrest, as required by the Act. 18 U.S.C. § 3161(b) (2008). Widi correctly asserts that the original indictment was outside this limit by a week or so[4]; although one or another possible exception may have applied. But, as he did not challenge the original indictment before trial, Widi waived his right to do so. <u>United States</u> v. <u>Spagnuolo</u>, 469 F.3d 39, 44-45 (1st Cir. 2006). Perhaps

---

[4]Widi was arrested and arraigned on November 28, 2008. An initial indictment followed on January 6, 2009; the superseding indictment adding the ammunition count was issued on February 24, 2010; and, following Widi's objection, a final superseding indictment on April 7, 2010, eliminated the new count but added ammunition to the original possession count.

for this reason, his main objection on appeal is to an amendment to the original indictment outside the Act's thirty-day window.

Subsequent to the original indictment, the government sought to add a second felon-in-possession count charging Widi with possessing ammunition in the apartment. Pointing to the existing charge based on guns, Widi complained that his possession of the guns and ammunition (if proved) comprised a single offense so the new charge would be "multiplicitous," as the jargon has it. The government then amended the possession charge to specify the ammunition as well as the guns in a single possession count.

Widi is correct that the reference to ammunition in the possession count appeared by superseding indictment more than thirty days after his arrest, but section 3161(b) is largely designed to assure that a defendant who is arrested or summoned does not linger indefinitely without a formal charge, United States v. Meade, 110 F.3d 190, 200 (1st Cir. 1997), and the statute does not purport to bar the amendment of an existing charge or the addition of new charges after thirty days. This court has explicitly allowed both. See United States v. Mitchell, 723 F.2d 1040, 1044-45 (1st Cir. 1983) (amendment); United States v. Burgos, 254 F.3d 8, 15-16 (1st Cir.), cert. denied, 534 U.S. 1010 (2001) (addition).

One circuit appears to be troubled by a superseding indictment that adds new facts to a count more than thirty days

after the original indictment,[5] but we remain of the view that section 3161(b) is concerned with a timely _original_ indictment and not superseding indictments--a view directly supported by the Ninth Circuit in a case whose facts closely resemble our own.  United States v. Carrasco, 257 F.3d 1045, 1050-53 (9th Cir.), cert. denied, 534 U.S. 1061 (2001).  While adding new facts or new counts can always raise issues of notice or delay in trial, these problems are dealt with by other rules and precedents.

Undue delay in trial is forestalled, among other means, by time limits in other sections of the Speedy Trial Act, notably sections 3161(c) and 3164(a)-(b), which are unaffected by a superseding indictment covering the same charge.  United States v. Santiago-Becerril, 130 F.3d 11, 19 (1st Cir. 1997).  As for notice, the amendment assured that Widi had notice of evidence--the ammunition--which (since Widi knew about it anyway) could arguably have been allowed at trial as a non-prejudicial variance under the original indictment even without the amendment.

Widi protests that he should have been allowed to represent himself when, near the close of the government's case, he and Rodway disagreed about whether a particular witness should be

---

[5]United States v. Giwa, 831 F.2d 538, 542 (5th Cir. 1987) (dictum); United States v. Bailey, 111 F.3d 1229, 1236 (5th Cir.), cert. denied, 522 U.S. 927 (1997) (dictum).  Whether the Fifth Circuit adheres to these doubts is uncertain.  See United States v. Martinez-Espinoza, 299 F.3d 414, 416 & n.4 (5th Cir. 2002); United States v. Perez, 217 F.3d 323, 328-29 & n.19 (5th Cir.), cert. denied, 531 U.S. 973 (2000).

called, as Widi desired. "[T]he right of self-representation becomes qualified once trial is under way." United States v. Noah, 130 F.3d 490, 497 (1st Cir. 1997). The district court heard Widi on the matter, refusing his request for a continuance and to represent himself at this late stage. We see no abuse of discretion.

Finally, Widi argues that the indictment was constructively amended because the indictment referred only to 108 rounds of ammunition found outside the safe and the jury might have been confused by references to the more than 2,000 total rounds found in the apartment or the 675 rounds found outside the safe. The government expressly relied on the 108 rounds listed in the indictment, and the district judge reminded the jury that evidence of the uncharged ammunition was only relevant to Widi's "state of mind or intent."

Widi's remaining arguments include other claims of error, such as the suggestion that investigators engaged in misconduct relating to the evidence, but the arguments not specifically discussed herein are unpersuasive and warrant no further discussion.

Affirmed.