# United States Court of Appeals
## For the First Circuit

No. 20-1144

UNITED STATES OF AMERICA,

Appellee,

v.

DARWIN RAMOS-DAVID,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Kayatta and Barron, Circuit Judges,
and Saris,* District Judge.

Lydia J. Lizarribar-Masini for appellant.
Alexander L. Alum, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, were on brief, for appellee.

---

* Of the District of Massachusetts, sitting by designation.

October 27, 2021

**SARIS, <u>District Judge</u>**.  Darwin Ramos-David ("Ramos") pleaded guilty to two armed carjackings, armed robbery, and using and carrying a firearm in connection with a carjacking.  At the sentencing hearing more than three months after Ramos' plea, his attorney requested a mental competency examination and moved to withdraw his plea pursuant to Federal Rule of Criminal Procedure 11, telling the District Court (Domínguez, J.) that the night before his change-of-plea hearing he was attacked in jail for being a "snitch" and he found out his mother had suffered a stroke.  Ramos claimed he was confused at his change-of-plea hearing and felt pressure to plead as a result of these events.  The District Court (Besosa, J.) denied both motions and pronounced a sentence that was nine months above the sentencing guidelines range.  Ramos appealed the denial of the motions and the sentence.  We affirm.

## I.    BACKGROUND FACTS

We begin with the background facts.  On January 3, 2017, four individuals took a 2008 Toyota Yaris from a woman while she was opening her trunk; one individual pointed a firearm at her.  She reported the incident to the police.  In a lineup on March 30, 2017, she identified Ramos as the perpetrator who took the car from her at gunpoint.  During cooperation discussions with the local and federal authorities, while he was in state custody, Ramos maintained that he had not participated in the carjacking.  He claimed the perpetrator was his brother and they looked alike.  On

- 3 -

April 20, 2017, Ramos was charged in a two-count indictment with using, carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and carjacking under 18 U.S.C. § 2119(1).

He moved to suppress the identification as impermissibly suggestive on February 22, 2018. On November 26, 2018, Ramos sought a continuance of the suppression hearing because of ongoing plea discussions. Another motion to continue the suppression hearing to complete the plea negotiation process was granted in mid-December 2018. In late January 2019, Ramos' counsel advised that Ramos wanted to continue the suppression hearing, which was rescheduled for April 4, 2019.

On March 21, 2019, the government filed a superseding indictment, adding another five charges relating to a March 13, 2017 armed robbery of a business and a March 20, 2017 armed carjacking of a Toyota Tacoma. On May 16, 2019, a second superseding indictment was filed.

On the day of the arraignment on the second superseding indictment and the rescheduled suppression hearing, May 23, 2019, Ramos withdrew his motion to suppress, signed a plea agreement, and pleaded guilty before a magistrate judge to all of the charges regarding the January 3, 2017 carjacking, the March 13, 2017 robbery and the March 20, 2017 carjacking (but not to the

- 4 -

associated gun charges or the felon in possession charge).[1] In stipulating to the facts supporting his plea and initialing the facts concerning each charge, Ramos admitted that he had participated in all three events and that he or those who aided and abetted him were prepared to cause serious bodily harm to both carjacking victims if doing so had been necessary to take the vehicles.

At his plea hearing, the magistrate judge questioned Ramos about the purpose of the hearing, and Ramos recounted that it was "to plead guilty for the aforementioned counts and to accept the time." Ramos said he was satisfied with his legal representation, and his lawyer said she had no concerns about his mental competence. The court found him competent to plead. The court also confirmed that Ramos had reviewed the plea agreement, called on the government to explain its terms, and verified with Ramos that he was, in fact, guilty of each of the counts in the plea agreement. The magistrate judge issued a report and recommendation to accept the guilty plea, which was adopted by the district court on July 2, 2019.

The plea agreement provided that the parties would agree to recommend an 84-month prison term for knowingly using, carrying, and brandishing a firearm "during and in relation to" the January

---

[1] Ramos waived his right to have the plea hearing before the district court judge.

- 5 -

3, 2017 carjacking to run consecutively to the term for all of the other offenses.  The pre-sentence report ("PSR") calculated a Total Offense Level of 25 and a Criminal History Category of III, which yielded a guidelines range sentence of 70-87 months for the remaining counts.  The plea agreement contained a waiver of appeal provision if he was sentenced to 162 months or fewer.

At his scheduled sentencing hearing[2] more than three months later, on September 10, 2019, Ramos requested the withdrawal of his plea. As the district court (Besosa, J.) later summarized, Ramos claimed that he was

> innocent of the charges against him, alleged a discrepancy between his plea and the charges presented to the grand jury, asserted he was beaten up at the jail the day he signed the plea agreement, and noted he learned the day before he signed the agreement that his mother had had a stroke. He also stated that, on the day of the change-of-plea hearing, he was ready for a suppression hearing and was surprised to receive a plea offer.

The court (Domínguez, J.) postponed the sentencing.  According to counsel, she met with Ramos after the hearing, and he was teary and upset.  Two days later, Ramos moved for an expert determination of his mental condition pursuant to 18 U.S.C. § 4241(b).  In his motion, Ramos repeated the allegations underlying his request for withdrawal of his guilty plea, stating that the night before he pleaded guilty, he learned that his mother had suffered a minor

---

[2] Due to sickness of the presiding Judge, the case was transferred to another Judge for sentencing (Domínguez, J.).

stroke and inmates beat him because they believed him to be a snitch. He asserted that those circumstances made him confused and impaired his understanding during the change-of-plea hearing. Id. The case was transferred back to the assigned judge (Cerezo, J.), but it was then transferred to Judge Besosa, whose sentence and order are on appeal.

In a written opinion, the district court (Besosa, J.) denied Ramos' motions on December 11, 2019. First, the court noted that it must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Relying on United States v. Kenney, 756 F.3d 36 (1st Cir. 2014), the court found no reasonable cause for a mental competency examination based on a review of the proceedings before the magistrate judge in which Ramos articulated the purpose of the proceeding, and before the sentencing judge at the initial truncated hearing where he engaged in "extended discourse" with the judge. The court also found that Ramos was not entitled to a withdrawal of his plea because (1) Ramos' claims of innocence were not credible, (2) an alleged grand jury error (the indictment initially indicated that he had stolen the Toyota Tacoma from one woman instead of two) did not affect

Ramos' substantial rights, and (3) neither the beating nor his mother's mild stroke caused coercion, duress or involuntariness.

On January 16, 2020, the district court proceeded to sentence Ramos. At the hearing, Ramos' attorney confirmed that his mother had been sick and put forward other mitigating factors (including his close relationship with his young children). The government recommended 171 months. The court, after adopting the PSR, reflected on Ramos' criminal history, which included "disorderly conduct, use of violence or intimidation against public authorities, threats, carrying and using a firearm without a license, and attempted robbery." It stated that it had considered all of the "3553(a) factors, the elements of the offenses, the plea agreement, and the need to promote respect for the law and to protect the public from further crimes by Mr. Ramos, as well as the need to address the issues of deterrence and punishment." Id. The court then pronounced the agreed-upon 84 months for knowingly using, carrying and brandishing a firearm "during and in relation to a crime of violence" to be served consecutively to the 96 months for the remaining counts. The resulting sentence of 180 months was a nine-month variance above the guideline range.

## II. DISCUSSION

On appeal, Ramos argues that the district court erred in denying his motion for a mental competency examination, in denying

his motion to withdraw his guilty plea, and in pronouncing a sentence that is substantively unreasonable. We consider each argument in turn.

**Mental Competency**. "The conviction of a person legally incompetent to stand trial violates due process." United States v. Maryea, 704 F.3d 55, 69 (1st Cir. 2013). Thus, Ramos could not plead guilty "unless he [did] so 'competently and intelligently.'" Kenney, 756 F.3d at 43 (quoting Godinez v. Moran, 509 U.S. 389, 396 (1993)). To safeguard that constitutional guarantee, courts are required to order a competency hearing on a party's motion or sua sponte "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); see United States v. Soldevila-Lopez, 17 F.3d 480, 489 (1st Cir. 1994) (holding that the court must examine whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him" (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam))).

There is no automatic entitlement to a competency hearing: to invoke § 4241(a), a "threshold showing" of reasonable

cause must be made.  United States v. Pellerito, 878 F.2d 1535, 1545 (1st Cir. 1989).  "[C]ompetence to stand trial is a functional inquiry.  A defendant may have serious mental illness while still being able to understand the proceedings and rationally assist his counsel."  United States v. Widi, 684 F.3d 216, 220-21 (1st Cir. 2012) (citations omitted). A district court's decision on a motion for a determination of mental competency is reviewed for abuse of discretion.  See Kenney, 756 F.3d at 43.

In determining whether reasonable cause has been shown (and thus whether the district court abused its discretion in denying the mental competency examination), we evaluate multiple factors including the district court's observations of the defendant, a review of hearing transcripts to determine if the defendant was coherent, opinions from medical professionals, the defendant's own statements, and defense counsel's "conclusion of competence" as to whether the defendant was able to assist in his own defense.  Widi, 684 F.3d at 220; see also United States v. Hurley, 63 F.3d 1, 19 (1st Cir. 1995) ("An experienced trial lawyer ought to be the first to notice a lack of cooperation or ability to assist so severe as to raise competency questions."), abrogated on other grounds by Salinas v. United States, 522 U.S. 52 (1997); United States v. Sanchez-Ramirez, 570 F.3d 75, 81 (1st Cir. 2009) (relying on the district court's observations of the defendant's conduct at trial).

In reviewing the proceedings before the magistrate judge and the initial sentencing judge, the district judge concluded that Ramos had not established reasonable cause to believe that he did not understand the nature of his plea or that he could not have assisted in the plea proceedings. As the government points out, the record reveals no history of mental health problems, and counsel raised no question of competency at the three arraignment hearings or to the probation officer.

Ramos relies on two circumstances in alleging that he should have been granted a mental competency hearing. First, he reports that he was beaten up in his jail cell the night before his plea for being a snitch, which affected his mental state. Second, Ramos says that he was in distress because he found out that his mother suffered a stroke the night before his plea. However, Ramos did not raise these issues at the plea hearing. Ramos' claim that he did not understand the court or the proceedings as a result of these events is belied by the record. Ramos read and signed the plea agreement prior to the plea hearing. Throughout the plea hearing before the magistrate judge, Ramos stated that he knew he was in court to plead guilty and to accept the punishment from his plea. His counsel also confirmed that Ramos was competent and understood the charges.[3] After questioning

---

[3] Counsel states she was not informed of the events of the night before.

Ramos about his understanding of the proceedings, asking his attorney about his competence, and observing his ability to answer questions coherently, the magistrate judge ruled that "Mr. Ramos is competent to plead and . . . he's aware of the purpose of the hearing." Ramos participated actively in his plea hearing, repeatedly affirming to the court that he understood the agreement as it was explained. Defense counsel has pointed to no red flags during the plea colloquy that would support a claim of incompetence. Finally, the events related—being beaten in jail and his mother's sudden ailment—bear at most a tenuous connection to mental incapacity.

Even though Ramos might have felt stressed by the unfortunate events of the evening before the plea, the court did not abuse its discretion in determining that he was mentally competent to enter a plea based on (1) his and his attorney's statements at the plea colloquy, and (2) the lack of any evidence that provided the court with reasonable cause to find Ramos mentally incompetent.

**Plea Withdrawal**. Federal Rule of Criminal Procedure 11(d)(2)(B) governs a motion to withdraw a guilty plea filed between the plea colloquy and the imposition of a sentence. See United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014). Under Rule 11, defendants are not entitled to withdraw their pleas; instead, they must show a "fair and just reason" for withdrawal.

Id. (quoting Fed. R. Civ. P. 11(d)(2)(B)). In applying that standard, courts have held that relevant considerations include:

> (1) whether the original plea was knowing, intelligent, and voluntary and in compliance with Rule 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the government would suffer prejudice if withdrawal is permitted.

United States v. Gardner, 5 F.4th 110, 114 (1st Cir. 2021); see also United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995).

This court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion, which "occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." United States v. Adams, 971 F.3d 22, 38 (1st Cir. 2020) (quoting United States v. Soto-Beníquez, 356 F.3d 1, 30 (1st Cir. 2003)) (internal quotation marks omitted).

Based on a review of the factors, we conclude that they weigh in favor of the district court's decision to deny the motion for withdrawal.

First, the district court found the magistrate judge diligently followed the requirements of Rule 11, and Ramos pleaded guilty in accordance with a plea agreement which he signed or initialed multiple times. He concluded that the transcript of the

- 13 -

plea colloquy "evinces the voluntary, knowing, and intelligent manner of the plea . . . ." Ramos' claim that he was confused was properly rejected in light of the extensive colloquy and initialed plea agreement. A court "typically disregard[s] representations at a plea colloquy 'only when the allegations [of impairment] were highly specific and usually accompanied by some independent corroboration.'" United States v. Santiago-Miranda, 654 F.3d 130, 138 (1st Cir. 2011) (quoting United States v. Pulido, 566 F.3d 52, 59 (1st Cir. 2009)).

Ramos' claim of lack of voluntariness rests largely on the physical violence while in jail and stress from familial circumstances. Assuming these facts to be true, the district court found that these facts may be "probative of [his] motivation for pleading guilty, [but they] do[] not necessarily show coercion, duress, or involuntariness." Santiago-Miranda, 654 F.3d at 137. We have held that the stress of familial problems, without more, does not render a plea involuntary. See Adams, 971 F.3d at 39 (noting that knowledge of the hardship inflicted on "his ailing mother and his children" did not "show duress or lack of voluntariness"); United States v. Caramadre, 807 F.3d 359, 369 (1st Cir. 2015) (explaining that the defendant's depression and his wife's breakdown did not transform the decision to change his plea into one lacking free will); Pellerito, 878 F.2d at 1541 (determining that a defendant's conversations with his

- 14 -

hospitalized mother, despite agitating him, did not render that defendant's plea involuntary). Nor did Ramos allege that his guilty plea was coerced by the threats made during the prison beating. The "beating," it should be noted, left no signs visible to counsel the following day, did not lead to any medical treatment, and was not corroborated by any other evidence. Rather, he believed he was being beaten to punish him for being a "snitch," not in order to get him to plead guilty. He denied he was threatened during the plea colloquy. See Kenney, 756 F.3d at 48 (holding that a defendant's answers "carry a strong presumption of verity" (quoting United States v. Martínez-Molina, 64 F.3d 719, 733 (1st Cir. 1995))).

Next, Ramos argues that the district court arbitrarily disregarded his claim of innocence as not credible with respect to the January 3, 2017 incident. "Merely voicing a claim of innocence has no weight in the plea-withdrawal calculus; to be given weight, the claim must be credible." United States v. Gates, 709 F.3d 58, 69-70 (1st Cir. 2013) (finding that a defendant's claim of innocence was not credible when it contradicted his statements in the change-of-plea colloquy and when the defendant produced no evidence to "prompt" the court to reject his prior representations).

Here, Ramos' protestations of innocence as to the January 3, 2017 carjacking are directly refuted by the stipulation

of facts that he signed as part of his plea agreement, the PSR that he did not object to, his affirmation to the probation officer that he was guilty of the crimes to which he pleaded, and his confirmations during the plea colloquy that he was guilty of the January 3, 2017 carjacking.

Ramos points to his longstanding claims of innocence and his refusal to plead multiple times in the past. He claims that he was taken by surprise by the offer of a plea agreement on the day of the suppression hearing. But his protestations of surprise ring hollow as the plea negotiations spanned multiple months. As evidence of his innocence, he points to his motion to suppress, in which he stated that the conditions of the lineup identification were suggestive and thus prone to "mistaken identification." While this motion may (or may not) have had merit, he abandoned it after months of plea negotiations: he withdrew it prior to his change-of-plea hearing after a plea agreement had been signed in which he admitted involvement in the January 3, 2017 carjacking. Without any evidence to support the credibility of his claim of innocence, this factor weighs against Ramos.

The timing factor also weighs against Ramos. The district court noted that the "the timing of defendant's request to withdraw his plea weakens his request." Our case law confirms that conclusion:

> Because the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just. While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses.

Doyle, 981 F.2d at 595; see also United States v. Pagan-Ortega, 372 F.3d 22, 31 (1st Cir. 2004) (finding a "two month lag between the plea hearing and appellant's motion to withdraw place[d] it well within the area of vulnerability because of untimeliness").

By waiting three months (with opportunities during that time to tell his attorney he wished to withdraw his plea) and announcing a desire to withdraw a plea during the sentencing hearing, Ramos "sap[ped] strength from any proffered reason for withdrawal." Doyle, 981 F.2d at 595. It is true that the government has not shown it would be prejudiced if Ramos withdrew his plea. However, because all the other factors weigh against withdrawal, absence of prejudice does not tip the balance. We thus find that the district court did not abuse its discretion when it denied Ramos' motion to withdraw the plea.

**Substantive Reasonableness**. By arguing for the lowest possible sentence, Ramos properly preserved his challenge to the substantive reasonableness of his sentence. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766-67 (2020). A sentence that

is "greater than necessary" is substantively unreasonable. Id. at 767 (quoting 18 U.S.C. § 3553(a)).

Substantive reasonableness is reviewed under an abuse of discretion standard. United States v. Vázquez-Martínez, 812 F.3d 18, 26 (1st Cir. 2016). In considering a sentence's substantive reasonableness, this court examines "the district court's contemporaneous oral explanation of the sentence, its near-contemporaneous written statement of reasons, and what fairly can be gleaned by comparing what was argued by the parties or proffered in the [PSR] with what the sentencing court ultimately did." United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (internal citations omitted). We keep in mind that "there is not a single reasonable sentence but, rather, a range of reasonable sentences." Id. at 92. "[A] major deviation from [the sentencing guidelines] must 'be supported by a more significant justification than a minor one.'" Id. at 91 (quoting Gall v. United States, 552 U.S. 38, 50 (2007)).

Ultimately, as long as "the sentencing court articulated 'a plausible sentencing rationale' and reached 'a defensible result,'" the sentence will be upheld. United States v. Matos-de-Jesús, 856 F.3d 174, 179 (1st Cir. 2017) (quoting Martin, 520 F.3d at 96).

After determining the proper guidelines range, not challenged by either party, the sentencing court stated that it

had considered the statutory factors in 18 U.S.C. § 3553(a).  It then went on to describe Ramos and the crimes he pleaded to, stating that

> Mr. Ramos is 30 years old. He is a resident of Bayamón, Puerto Rico, and has three dependents, ages 13, 10, and 8.  He completed the tenth grade and was unemployed at the time he committed the offenses.
>
> He is in good physical and mental health.  He experimented with marijuana as a teenager but denied any history of drug dependence.
>
> This is his third criminal conviction.  His prior record involves disorderly conduct, use of violence or intimidation against public authorities, threats, carrying and using a firearm without a license, and attempted robbery.
>
> The Court has taken into consideration the elements of the offenses and Mr. Ramos' participation in them.
>
> He participated in three robberies, including two carjackings, brandishing a dangerous weapon during one of the carjackings and during the robbery of the Hydroponics of the Caribbean establishment.
>
> The Court has also considered all the 18 U.S. Code 3553(a) factors, the elements of the offenses, the plea agreement, and the need to promote respect for the law and to protect the public from further crimes by Mr. Ramos, as well as the need to address the issues of deterrence and punishment.

Ramos contends that the court's explanation did not justify its imposition of a 9-month upward variance.  "[A] reviewing court must assess the sentencing court's explanation of an upwardly variant sentence in a practical, common-sense manner. . . . The extent of the explanation must be commensurate with the extent of the variance."  United States v. Díaz-Lugo, 963 F.3d 145, 156 (1st Cir. 2020).  To be sure, the sentencing court's

- 19 -

explanation is brief, but the upward variance of nine months (over 171 months) was not substantial.  The court predicates its sentence on Ramos' circumstances, criminal history, and the violent nature of his three armed robberies among other considerations.  The court properly considered the need to protect the public and to deter Ramos from committing further crimes.  Thus, the sentencing court's specific reasons for imposing a modest above-the-guidelines sentence for two carjackings and an armed robbery within a span of three months complied with § 3553(c) and provided a plausible rationale.  See United States v. Díaz-Arroyo, 797 F.3d 125, 129-30 (1st Cir. 2015).

Without much explanation, Ramos contends that the sentencing court did not adequately take into account mitigating circumstances.  However, the sentencing court indicated its awareness of the Ramos' personal history and characteristics (like his children and lack of drug dependence) as required by § 3553(a). Ramos' real complaint seems to be that the court "weighed those factors less heavily than he would have liked." United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015).  A sentencing court has "wide limits" in the balancing of a defendant's personal characteristics, id., and these limits were not transgressed here. Overall, Ramos' sentence was not an abuse of discretion given the totality of the circumstances.

## III.  CONCLUSION

For the reasons stated above, we find that the district court did not err when it denied Ramos' motion for a determination of mental competency and motion to withdraw his plea and pronounced a sentence that was substantively reasonable.

<u>Affirmed.</u>